RICH ET AL., APPELLANTS, *v.* QUINN, EXR., ET AL., APPELLEES.

(No. 83-05-030—Decided November 21, 1983.)

*Mr. David A. Garretson,* for appellants Elinor Rich *et al.*

*Mr. Paul N. Herdman,* for appellees John C. Quinn, Executor of the estate of Samuel J. Burgemeier *et al.*

*Per Curiam.* This cause came on to be heard upon the appeal from the Court of Common Pleas of Warren County.

Plaintiffs-appellants initiated this action attacking the validity of what is purported to be the last will of Samuel J. Burgemeier ("Sam"), claiming that the will was the product of undue influence exerted by Fred and Lucy Burgemeier or, in the alternative, that Sam lacked testamentary capacity at the time the will was executed. Prior to trial, a motion *in limine* by appellees was granted which limited the presentation of evidence regarding undue influence and lack of testamentary capacity to those events occurring within a reasonable time before and after the date on which the contested

will was executed, to wit: February 11, 1982.

After the presentation of appellants' evidence at a trial by jury, the court below granted appellees' motion for directed verdict, entering its judgment on April 5, 1983. The appeal herein was subsequently initiated.

Appellants assert two assignments of error. The propriety of granting appellees' motion for directed verdict is alleged to be error as is the granting of appellees' motion *in limine*. For the following reasons, we find both assignments of error to be well-taken.

## I

In granting appellees' motion for directed verdict, the trial court found that:

"* * * plaintiffs have produced no evidence of undue influence or restraint, nor any evidence from which an inference of undue influence or restraint could be reasonably drawn, which was actually exerted upon the mind of the testator with respect to the execution of the will here in question and which resulted in the making of a will which the testator would not otherwise have made. * * *"

It is with this conclusion that we must disagree.

## A

It is difficult to reduce the concept of undue influence to a series of words or elements in an objective definition. The subjective nature of the concept of one manipulating another's thoughts and actions to the point of the other's not doing what he truly wants to do and the overall atmosphere of secrecy or intimacy normally surrounding the drafting of a will make it impossible to develop absolute black-white distinctions between what is and what is not undue influence.

Of course, as all persons wishing to execute a will are "influenced" by the affectations and persuasions of family, friends, moral and spiritual advisors and a host of others, such environmental in-

fluences cannot all be "undue." Ohio courts have generally held that where an individual's influence restrains a testator from disposing of his property in accordance with the testator's own wishes and judgment and substitutes the wishes or judgments of another, such influence is undue. *West* v. *Henry* (1962), 173 Ohio St. 498 [20 O.O.2d 119]. The undue influence must so overpower and subjugate the mind of the testator as to destroy his free agency and make him express another's will rather than his own. *West, supra.*

In order to sustain allegations of undue influence, a plaintiff must prove: (1) that the testator was "susceptible"; (2) another's opportunity to exert the influence; (3) the *fact* of improper influence exerted or attempted; and (4) the result showing the effect of such influence. *West, supra.* Of course, we must reverse the granting of a directed verdict in favor of appellees if, after construing the evidence most strongly in favor of appellants, we determine that reasonable minds could differ as to whether there is a factual issue related to any one of these four elements outlined above.

## B

In the case at bar, the testator, Sam, and his brother, Fred, were the sole surviving children of Frances and Bill Burgemeier, whose home Sam had inherited. In 1978, Fred and Lucy moved into Sam's home upon the death of another brother, Bill.

Appellants are the children of Len Burgemeier, another brother of Fred and Sam. In 1979, Sam executed a will leaving one-half of his estate to appellants and one-half of his estate to Fred. Appellants contend that Fred and Lucy slowly isolated Sam from them and others and eventually unduly influenced Sam to change his will so that Fred received the entire estate.

The evidence presented indicates that Sam made statements that he never wanted Fred and Lucy to move in with him and that they did not want him to

have visitors, even though Sam always enjoyed having company. Fred and Lucy allegedly changed Sam's phone number and eventually obtained an unlisted number. Fred and Lucy refused to allow certain of appellants to visit with Sam and, even when visitors were permitted, Fred and Lucy never left the room. There was testimony that Sam stated that he did not enjoy being in his home and that he preferred the hospital as he could have visitors. It is also alleged that Sam stated, "I want to die. I do not want to go back to the home because they're sitting there waiting for me to die," and that "I'm being kept like a prisoner in my home." There was evidence that a priest and another woman were also persuaded not to visit Sam, the former because Sam gave him money at each visit and the latter because she was, in Fred's words, "a fortune hunter." There is testimony that Fred did not want appellants to visit because he felt they were after Sam's money.

In February 1982, Fred and Lucy first became aware of the 1979 will in which Sam left one-half of his estate to appellants. That same day, appellee Quinn, Sam's attorney and the named executor in Sam's will, was called to the Burgemeier home by Fred and a new will was drafted in which Sam left his entire estate to Fred.

After the new will was drafted, Fred telephoned one of the appellants, Frances Propp. After talking about the 1979 will, Fred allegedly told Frances that: "You might as well forget what Sammy wanted to do for you because *I fixed it.* You're not going to get anything." (Emphasis added.)

## C

There is clearly evidence that Sam was a susceptible testator. His health was failing and he became dependent on Fred and Lucy for care. Fred and Lucy had the opportunity to influence Sam. The inferences which can be drawn from appellants' evidence, viewed most strongly in their favor, connote a picture of a man held in isolation from his friends and relatives. Of course, the fact that a new will, naming appellee Fred as the sole beneficiary of Sam's estate, was executed to appellants' detriment would support a finding that the fourth element, outlined above, was satisfied.

The issue, then, is whether there is evidence of the *fact* that undue influence was exerted. This court holds that the timing of the revision of the will and its proximity to Fred and Lucy's discovery of the 1979 will, when combined with the statement allegedly made by Fred to Frances subsequent to the revision, that he had "fixed it" so that she would receive nothing from Sam's will, created a factual issue as to whether or not undue influence was, in fact, exerted.

Ohio courts have long recognized the inherent difficulty a plaintiff faces in proving allegations of undue influence and that:

The issues related to undue influence are generally determined upon circumstantial evidence and inferences drawn from a full presentation of facts which may be inconclusive when viewed separately. *Bd. of Education* v. *Phillips* (1921), 103 Ohio St. 622. The case at bar is to be distinguished from and contrasted with *In Re Estate of McNabb* v. *Margerum* (Sept. 28, 1983), Butler App. No. CA83-01-031, unreported, in which there was simply no evidence in the record from which an inference that undue influence was, in fact, exerted could be found.

Accordingly, appellants' second assignment of error is well-taken.

## II

Appellants also argue that the trial court improperly granted appellees' motion *in limine.*

Where a will is attacked on grounds of undue influence, a *wide range* of inquiry should be permitted to bring before the jury the facts and influences bearing upon

the preparation of the will. *Spidel* v. *Warrick* (1948), 83 Ohio App. 332 [38 O.O. 400]; see, also, *Phillips, supra.* As we noted above, circumstantial evidence is generally required to prove undue influence and a full presentation of the facts is to be encouraged. *Phillips, ·supra.*

A motion *in limine* is a relatively modern device for presenting potential evidentiary problems to the court prior to trial. Though not expressly provided for by rule or statute, the ability of a court to entertain such motions lies in the inherent power and discretion of the trial judge to control the proceedings. See Evid. R. 103(A) and 611(A); see, also, Giannelli, Ohio Evidence Manual (1982) 17, Section 103.07(a); McCormick, Evidence (2 Ed. Cleary Ed. 1978 Supp.) 17, Section 52; and Annotation (1975), 63 A.L.R.3d 311.

In *Riverside Methodist Hosp. Assn.* v. *Guthrie* (1982), 3 Ohio App. 3d 308, it was noted that motions *in limine* can be used in two different ways. First, where the admissibility of evidence, because of its incompetence or impropriety, can be determined prior to trial, a motion *in limine* can be used as the equivalent of a motion to suppress. *Guthrie, supra,* at 310. Second, a motion *in limine* can be used to obtain a preliminary ruling to preserve silence during trial on a particular issue in order to avoid potential prejudice until the admissibility of the contested evidence can be reviewed by the court outside of the presence of the jury in light of what has transpired at trial.

In the rare case, the first use is sanctioned. Generally, however, the second use is appropriate but improperly utilized. The sustaining of the motion *in limine* does *not* determine the admissibility of the questioned evidence. As Judge Whiteside noted in *Guthrie, supra,* at 310:

"* * * Properly utilized, a motion *in limine,* when sustained, requires a two-step procedure. First, a consideration of the motion *in limine* as to whether any reference to the area in question should be precluded until admissibility can be ascertained during trial. Second, at the time when the party desires to introduce the evidence which is the subject of the motion *in limine,* there must be a second hearing or determination by the trial court as to the admissibility of the evidence, which is then determined by the circumstances and evidence adduced in the trial and the issues raised by the evidence."

An evidentiary ruling, prospective or otherwise, is never final until the trial is completed and all avenues of admission have been explored and denied. *State* v. *Spahr* (1976), 47 Ohio App. 2d 221, 223 [1 O.O.3d 289]. See, also, *State* v. *White* (1982), 6 Ohio App. 3d 1.

In the case at bar, the motion *in limine* was argued and granted on the day of trial immediately before the trial began. While there is no entry sustaining the motion, the court, after arguments by counsel, "granted the motion as presented to the Court," and as delineated earlier in this opinion.

Several times during the trial, appellants were prohibited from developing testimony as to statements made by Sam prior to 1979 discussing Fred and Lucy's continued presence in his home or his testamentary intent. Appellants also proffered expected testimony. See *White, supra,* at 4.

As we stated above, a *wide range* of evidence is to be permitted and, as undue influence is usually proved by circumstantial evidence, appellants must not be prevented from presenting evidence relevant to the alleged isolation of the testator or as to the testator's testamentary capacity. *Spidel, supra.* The time limits established by the granting of appellants' motion *in limine* were improper.

Accordingly, appellants' first assignment of error is well-taken.

The assignments of error properly before this court having been ruled upon as heretofore set forth, it is the order of this court that the judgment herein appealed·from be, and the same hereby is,

reversed and remanded for further pro-
ceedings not inconsistent with this deci-
sion.

*Judgment reversed and
cause remanded.*

KOEHLER, P.J., and JONES, J., con-
cur.

HENDRICKSON, J., not participating.