OPINION
{¶ 1} Appellant, Patsy Sue Whitt, appeals the decision of the Greene County Court of Common Pleas to deny the reformation of a quitclaim deed. Appellees/cross-appellants appeal the decision of the trial court to dismiss their counterclaims. We affirm in part, reverse and remand in part the decision of the trial court.
 {¶ 2} Donnie Whitt and appellant, his second wife, owned a single-family home at 2376 Alder Wood Court, Xenia, by way of a survivorship deed. On February 5, 2001, Donnie Whitt executed a revocable trust and transferred his interest in the real estate to the Donnie Whitt Revocable Family Trust. That same day, appellant also conveyed her interest in 2376 Alder Wood Court to the trust by quitclaim deed. Shortly thereafter, Donnie Whitt died.
 {¶ 3} The alternate trustee to the Donnie Whitt Revocable Family Trust, Billy Whitt, sold the real estate as required by the provisions of the trust. Patricia L. Whitt, Donnie Whitt's first wife, purchased the real estate. Gregory Whitt, Patricia and Donnie Whitt's son, pledged $200,000 of his interest in the trust toward Patricia's purchase of the real estate. After closing, Patricia promptly initiated eviction proceedings against appellant by serving proper notices. Appellant filed a complaint alleging that her husband and the attorney who prepared the deed, Deborah D. Hunt, Esq., unduly influenced her to execute the deed. Appellant asked for the deed to be canceled, rescinded and reformed. Gregory Whitt and Billy Whitt filed counterclaims against appellant alleging that appellant's complaint had no legal or factual basis, that the filing of her lawsuit was an abuse of process, that her lawsuit caused damages to the trust because the trust incurred attorney fees and court costs and that appellant's complaint slandered the title of the real estate. All of the parties and the trial court judge agreed to bifurcate the trial and hear cross-appellant's counterclaims separately.
 {¶ 4} A trial regarding the deed reformation was held on November 19 and December 21 of 2001, and on January 3, 2002. On February 7, 2002 the trial court dismissed appellant's complaint finding that appellant was not a "susceptible" person, therefore, she was not unduly influenced into signing the deed. The trial court also overruled Gregory Whitt's and Billy Whitt's counterclaims without having a hearing. Appellees/cross-appellants appeal the decision raising a single assignment of error and appellant appeals the decision raising three assignments of error which will be addressed out of sequence:
 {¶ 5} Appellant's Assignment of Error No. 1:
 {¶ 6} "Whether the trial court erred to appellant's prejudice when it ignored unrebutted expert opinion testimony? Yes."
 {¶ 7} Appellant argues that pursuant to State v. Brown (1983),5 Ohio St.3d 133, a trial court may not ignore unrebutted expert opinion testimony. Appellant states that Dr. Massimo DeMarchis, a clinical psychologist who evaluated her, testified that her I.Q. score is significantly below average. Appellant also states that Dr. Rick T. Bowers, a practicing psychiatrist, testified that she suffers from depression and suffered from depression on the day she signed the quitclaim deed granting her interest in 2376 Alder Wood to the trust. Appellant argues the trial court erred because it provided no basis to ignore the expert opinion testimony.
 {¶ 8} However, an expert's opinion, even if uncontradicted, is not conclusive. State v. Owens (May 10, 1999), Madison App. No. CA98-05-022, at 13; State v. Brown (1983), 5 Ohio St.3d 133, 135, citing United Statesv. Hall (C.A.5, 1978), 598 F.2d 995. The trial court's failure to adopt the opinion of an expert does not require us to conclude that the trial court failed to consider that testimony. City of Columbus v. Bravi (Mar. 5, 1991), Franklin App. No. 90AP-1135, at *2. The trial court's function is to weigh the credibility of the witnesses and to decide disputed issues of fact. Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77.
 {¶ 9} Dr. DeMarchis testified that he administered an I.Q. test to appellant using the Wechsler Adult Intelligence Scale and he opined within a reasonable degree of psychological certainty that appellant has attained an I.Q. of 71. Dr. DeMarchis testified that he also attempted to administer a Minnesota Multiphasic Personality Inventory test, however, the test results were rendered invalid because appellant answered the questions out of sequence on the answer sheet and left the last 25 items blank. Dr. DeMarchis testified that appellant functioned at a level above that which she obtained on the I.Q. test. Dr. DeMarchis testified that it is possible for a person to alter their I.Q. test results if they wish.
 {¶ 10} Dr. Bowers testified that appellant suffers from depression and meets the criteria for dependent personality disorder. However, Dr. Bowers testified that he would estimate appellant's I.Q. at "around 80 or so." Dr. Bowers also testified that a person who wants to do poorly on an I.Q. test could lower her score.
 {¶ 11} Appellant's own testimony corroborates the opinion that she functions at a level above that suggested by her I.Q. Appellant testified that she operated her own cleaning business for seven years, she was the manager of a restaurant for two or three years, and she was a nurse's aide for six years.
 {¶ 12} After reviewing the evidence, we find that the trial court did not ignore the expert opinion testimony. Therefore, appellant's first assignment of error is overruled.
 {¶ 13} Appellant's Assignment of Error No. 3:
 {¶ 14} "Whether the trial court erred to appellant's prejudice when it found that (1) appellant was not a susceptible person and (2) attorney Deborah Hunt did not unduly influence appellant when the evidence was manifestly otherwise? Yes."
 {¶ 15} In a claim of undue influence, Ohio courts have found that a party has been unduly influenced by another when the party is restrained from disposing of property in accordance with his or her own wishes and instead substitutes the wishes of another. West v. Henry
(1962), 173 Ohio St. 498, 501. The contestant claiming undue influence bears the burden of demonstrating the following four elements: (1) a susceptible party; (2) another's opportunity to exert influence; (3) the fact that improper influence was exerted or attempted; and (4) a result showing the effect of the improper influence. Id.; Krischbaum v. Dillon
(1991), 58 Ohio St.3d 58, 65. Issues relating to undue influence are generally determined upon circumstantial evidence and inferences drawn from a full presentation of facts. Rich v. Quinn (1983),13 Ohio App.3d 102, 104.
 {¶ 16} The evidence demonstrates that Donnie Whitt and appellant contacted Hunt to initiate their estate planning. Hunt informed them that they could accomplish their goals by "putting the assets into a trust." However, Hunt also stated that the plan could not happen unless appellant agreed to the plan. Hunt testified that she told appellant several times that she did not need to agree to this plan if she did not want to. Hunt also testified that she told appellant, "you do not have to agree to a new deed." Furthermore, Hunt testified that she discussed appellant's ability to retain her own counsel.
 {¶ 17} Appellant was asked in deposition, "You knew before you went into the meeting, you knew that you had a joint survivorship deed on that house?" She answered, "Sure." When appellant was asked, "You knew what that meant?" she answered, "Yeah, I knew what that meant." She was asked, "What did that mean?" Appellant answered, "That means * * * if anything happened to Donnie it was mine." Appellant was asked, "Did you participate in the meeting?" She answered, "Yes." Appellant was asked, "you didn't call (Hunt) and tell her that you were in opposition to the plan, is that right?" Appellant answered, "No." Furthermore, appellant testified that she was not under the influence of any medication the day she signed the quitclaim deed.
 {¶ 18} Specifically, we must examine the trial court's findings and affirm if there is some competent credible evidence that Hunt has shown by a preponderance of the evidence that appellant's conduct was free from undue influence or fraud and that appellant acted voluntarily and with a full understanding of her act and her consequences. See Foxv. Stockmaster, Seneca App. Nos. 13-01-34, 13-01-35, 2002-Ohio-2824, at ¶ 53.
 {¶ 19} Appellant has not demonstrated that her execution of the quitclaim deed transferring ownership of 2376 Alder Wood Court to the Donnie Whitt Revocable Family Trust was a substitute of her wishes to dispose of the property for the wishes of another. There is competent credible evidence that appellant's conduct was free from undue influence or fraud and that appellant acted voluntarily and with a full understanding of her act and her consequences. Therefore, appellant's third assignment of error is overruled.
 {¶ 20} Appellant's Assignment of Error No. 2:
 {¶ 21} "Whether the trial court erred to appellant's prejudice when it failed to engaged [sic] in the two-step inquiry required for undue influence cases as required by Krischbaum v. Dillon? Yes."
 {¶ 22} The trial court found that Deborah Hunt, Esq. did not unduly influence appellant to sign the quitclaim deed. However, appellant argues the trial court must first determine whether her action was the result of Hunt's influence before determining whether the influence was undue.
 {¶ 23} The phrase "undue influence" suggests a two-step inquiry: "first, it must be ascertained whether transaction was the result of influence brought to bear upon a susceptible party; second, it must be determined whether that influence was actually undue." (Emphasis added.)Krischbaum, 58 Ohio St.3d at 68; Lah v. Rogers (1998), 125 Ohio App.3d 164. However, not every exertion of influence will nullify a given transaction. Krischbaum at 68. General influence, however strong or controlling, is not undue influence. See West v. Henery (1962)173 Ohio St. 498.
 {¶ 24} The evidence demonstrates that Hunt informed the Whitts' that they could accomplish their goals by "putting the assets into a trust." However, Hunt also stated that the plan could not happen unless appellant agreed it. Hunt told appellant several times that she did not need to agree to this if she did not want to. Hunt also told appellant, "you do not have to agree to a new deed." Furthermore, Hunt discussed appellant's ability to retain her own counsel.
 {¶ 25} The evidence demonstrates that before appellant went into the meeting she knew that she and her husband had a joint survivorship deed in the house. Appellant knew that if anything happened to her husband she would become the sole owner of the real estate. Appellant admitted that she participated in the estate-planning meeting. Appellant also admitted that she did not call Hunt and tell her that she was in opposition to the plan. Furthermore, appellant testified that she did not take any medication that day.
 {¶ 26} Our review of the record reveals that the trial court engaged in a two-step inquiry regarding Hunt's influence. The trial court analyzed the meetings between Hunt and appellant. Considering the evidence, the trial court determined there is no evidence to indicate that anything at the meetings affected appellant's ability to "exercise her own free will." The trial court determined that appellant was not influenced by Hunt. Once the trial court determined that appellant was not influenced, it found that she was not a susceptible party; secondly, the court found that she was not unduly influenced by Hunt. Consequently, appellant's second assignment of error is overruled.
 {¶ 27} Appellees/Cross-Appellants' Assignment of Error:
 {¶ 28} "The trial court's dismissal of the counterclaims filed by Billy and Greg should be reversed because the trial court erred in ruling on those counterclaims without having a separate hearing regarding such claims, as agreed by the trial court and all of the parties prior to the trial."
 {¶ 29} Cross-appellants filed counterclaims alleging that appellant's complaint had no legal or factual basis, that the filing of her lawsuit was an abuse of process, that her lawsuit caused damages because it slandered the title of the real estate, and harmed the trust because it required the trust to incur attorney fees and court costs. Prior to trial, all of the parties and the trial judge agreed to bifurcate the trial of cross-appellants' counterclaims. A separate trial was not held. However, the trial court dismissed cross-appellants' counterclaims in its February 7, 2002 judgment entry. The trial court stated that appellant's complaint was not filed wantonly and with disregard for cross-appellants' rights. The trial court also found that appellant had not intentionally slandered the title to the property.
 {¶ 30} An appellate court reviews a trial court's decision to dismiss a counterclaim or a cross-claim under an abuse of discretion standard. See Lloyd's Rentals v. Gault (Sept. 23, 1992), Summit App. No. 15525. A trial court can sua sponte dismiss a counterclaim or cross-claim only in limited circumstances, namely, if the party fails to prosecute its action or fails to comply with the Civil Rules or an order from the court. See Civ.R. 41(B)(1) and (C). The law prefers deciding cases on their merits; however, if a party's conduct is "so negligent, irresponsible, contumacious or dilatory" it "provide(s) substantial grounds for a dismissal * * * for a failure to prosecute or obey a court order." Schreiner v. Karson (1977), 52 Ohio App.2d 219, 223.
 {¶ 31} In the case sub judice, the trial court dismissed cross-appellants' counterclaims without allowing a hearing on the matter, as agreed by all parties. There is no evidence that cross-appellants failed to prosecute their claims, comply with the Civil Rules, or obey an order from the court. Additionally, the record does not reflect that cross-appellants' conduct was "negligent, irresponsible, contumacious or dilatory" to warrant the dismissal. Consequently, the trial court abused its discretion when it sua sponte dismissed cross-appellants' counterclaims. Accordingly, cross-appellants' assignment of error is sustained.
 {¶ 32} Judgment affirmed in part, reversed in part and remanded for determination of cross-appellants' counterclaims.
WALSH and POWELL, JJ., concur.
Valen, P.J., of the Twelfth Appellate District, sitting by assignment of the Chief Justice, pursuant to Section 5(A)(3), Article IV of the Ohio Constitution.
Walsh, J., of the Twelfth Appellate District, sitting by assignment of the Chief Justice, pursuant to Section 5(A)(3), Article IV of the Ohio Constitution.
Powell, J., of the Twelfth Appellate District, sitting by assignment of the Chief Justice, pursuant to Section 5(A)(3), Article IV of the Ohio Constitution.