[Cite as *Kinchen v. A.R. Mays, Etc.*, 2014-Ohio-3325.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 100672**

## KATHRYN R. KINCHEN

PLAINTIFF-APPELLANT

vs.

## A.R. MAYS, ETC., ET AL.

DEFENDANTS-APPELLEES

**JUDGMENT:**
AFFIRMED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Probate Division
Case No. 2012 ADV 178703

**BEFORE:** S. Gallagher, P.J., E.A. Gallagher, J., and Blackmon, J.

**RELEASED AND JOURNALIZED:** July 31, 2014

**ATTORNEY FOR APPELLANT**

David P. Bertsch
Stark & Knoll Co., L.P.A.
3475 Ridgewood Road
Akron, OH    44333


**ATTORNEYS FOR APPELLEE**

**For A.R. Mays, etc.**

Franklin C. Malemud
Adriann S. McGee
Brian D. Sullivan
Reminger Co., L.P.A.
101 W. Prospect Avenue
Suite 1400
Cleveland, OH    44115

**For Alex Kinchen, et al.**

Ryan P. Nowlin
James D. Vail
Schneider, Smeltz, Ranney & LaFond
1111 Superior Avenue
Suite 1000
Cleveland, OH    44114

SEAN C. GALLAGHER, P.J.:

{¶1} Plaintiff Kathryn Kinchen ("Kathryn") appeals from the trial court's decision granting summary judgment upon Kathryn's undue influence claim, in favor of A.R. Mays, as the trustee of the decedent Gilbert Kinchen's trust ("Trust"), and Gilbert Kinchen's children, who are the beneficiaries of the family trust portion of the Trust, and denying Kathryn's motion to amend the complaint to include a claim for reformation of the Trust pursuant to R.C. 5804.15. For the following reasons, we affirm.

{¶2} The Trust, established in 2007, had two distinct portions, a family trust designating Gilbert Kinchen's ("Gilbert") five children as beneficiaries, and a marital trust for Kathryn's benefit. All Gilbert's assets were intended to flow through the Trust instrument upon his death. As originally drafted, Gilbert funded the family trust with a $2 million distribution from Gilbert's estate. The rest of his assets would fund a marital, Q-TIP trust.

{¶3} The events giving rise to the current case largely occurred in the last two weeks of Gilbert's life. On July 31, 2010, Kathryn had to travel to care for her elderly parents. Unable, or unwilling, to leave Gilbert alone, Kathryn arranged for one of his daughters, Hope Kinchen, to care for Gilbert in Kathryn's absence. According to his primary care physician, Gilbert suffered from Sundowner Syndrome (confusing day and night) and other intermittent episodes of confusion and senility.

{¶4} According to Kathryn, as supported solely through her own affidavit, during the week in which Gilbert's daughter visited, he withdrew approximately $70,000 from a

joint account he shared with Kathryn and hundreds of thousands of dollars in certificates of deposit from a safe deposit box. It is undisputed that Gilbert also spoke with his attorney, Michelle Yeh, about amending his Trust instrument to increase the funding amount for the family trust from $2 million to $4 million. Attorney Yeh complied and drafted the amendment that Gilbert executed on August 4, 2010.

{¶5} Attorney Yeh testified that Gilbert requested the amendment in order to maximize the distribution of assets to his children, up to the maximum federal estate exemption. Without getting into the political details, in 2010, there was no estate tax, but it was anticipated that Congress would enact legislation reinstating the estate tax, with a $3 million to $4 million exemption. Gilbert sought to maximize the benefit of the anticipated exemption level, but if the amount were less than the $4 million funding, Gilbert would use the marital trust to shelter any amount of the estate exceeding the estate tax exemption. The purpose of the marital trust, according to Attorney Yeh, was to transfer any remaining assets tax free, so as to limit the amount of federal taxes and maximize the distribution to his children.

{¶6} On August 11, 2010, Gilbert was admitted to a hospital where, at the age of 83, he succumbed to illness. It was not until after his death that Kathryn was notified of the amendment to the Trust. At that time, Kathryn was also notified that Gilbert lacked sufficient assets to fully fund the $4 million family trust, which resulted in Kathryn receiving nothing through the marital trust.

{¶7} Kathryn challenged the amendment to the Trust, claiming that Hope Kinchen exerted undue influence upon Gilbert. Further, Kathryn filed a motion to amend the complaint to include a claim for reformation of the trust pursuant to R.C. 5804.15, based on the mistake of the drafter. Kathryn claimed that Gilbert had always intended to provide Kathryn half of his assets and that on August 4, 2010, due to his infirmity, Gilbert was mistaken as to his net worth. According to Kathryn, Gilbert would not have amended the family trust had Gilbert fully appreciated his economic position.

{¶8} The trial court denied Kathryn leave to amend the complaint to include a claim for reformation and, shortly thereafter, granted the defendants' motion for summary judgment upon the undue influence claim and lack of capacity claim.[1] Kathryn timely appealed, advancing three assignments of error, two of which are interrelated and shall be addressed first.

{¶9} In her second and third assignments of error, Kathryn claims the trial court erred in granting summary judgment in favor of the defendants and upon Kathryn's claims that the amendment to the Trust was invalid as a product of undue influence or that Gilbert lacked capacity to execute the document.[2] We find no merit to Kathryn's arguments.

---

[1]Kathryn's complaint is limited to directly stating an undue influence claim, but the lack of capacity could be inferred from a generous reading of the factual allegations. In the abundance of caution, we will treat the lack of capacity as properly pleaded for the purposes of the appeal.

[2]Kathryn's third assignment of error challenges the dismissal of the allegations against Mays for allegedly mismanaging the Trust assets. Kathryn concedes that the allegations against Mays are intrinsically linked to the validity of the amendment. If the amended Trust is deemed valid, no

{¶10} Generally, in Ohio, a finding of undue influence requires (1) a susceptible testator, (2) another's opportunity to exert undue influence on the testator, (3) improper influence exerted or attempted, and (4) a result showing the effect of such influence. *Redman v. Watch Tower Bible & Tract Soc. of Pennsylvania*, 69 Ohio St.3d 98, 101, 630 N.E.2d 676 (1994). The influence must bear directly on the act of making and executing the testamentary disposition. *West v. Henry*, 173 Ohio St. 498, 501, 184 N.E.2d 200 (1962). As succinctly stated, it is insufficient to rely on "the mere existence of undue influence, or an opportunity to exercise it," even with a substantiated motive to interfere. *Rich v. Quinn*, 13 Ohio App.3d 102, 103, 468 N.E.2d 365 (12th Dist.1983). Undue influence "must be actually exerted on the mind of the testator with respect to the execution of the will in question,*"* and "so overpower and subjugate the mind of the testator as to destroy his free agency and make him express another's will rather than his own." *Id.*

{¶11} In the alternative, testamentary capacity exists when the testator sufficiently understands the nature of the business in which he is engaged, comprehends the nature and extent of his property, knows the names and identity of those who could inherit, and appreciates his relation to the members of his family. *In re Goehring*, 7th Dist. Columbiana No. 05 CO 27, 2007-Ohio-1133, ¶ 49, citing *Birman v. Sproat*, 47 Ohio App.3d 65, 67-68, 546 N.E.2d 1354 (2d Dist.1988). "Testamentary capacity is

claims against the trustee exist because Gilbert's assets were insufficient to fully fund the family trust, for which Kathryn is not a beneficiary. She therefore lacked standing to challenge the administration of the family trust portion of the Trust.

determined as of the time of the execution of the will." *Smith v. Gold-Kaplan*, 8th Dist. Cuyahoga No. 100015, 2014-Ohio-1424, citing *Meek v. Cowman*, 4th Dist. Washington No. 07CA31, 2008-Ohio-1123, ¶ 9.

**{¶12}** Regardless of the standard, the burden of proof for the purposes of determining the lack of testamentary capacity or undue influence is on the party contesting the will or testamentary instrument. *Kennedy v. Walcutt*, 118 Ohio St. 442, 161 N.E. 336 (1928), paragraph six of the syllabus. Further, R.C. 5804.06 specifically adopts the undue influence standards from will contest actions for the purposes of determining the validity of a trust.

**{¶13}** As this court recently recognized, it is not enough to submit an unsupported, self-serving affidavit detailing a party's own personal observations of the decedent exhibiting signs of being anxious, uncharacteristically abusive, confused, or paranoid, especially when that party is both contesting the will admitted to probate and has no other corroborating material introduced pursuant to Civ.R. 56. *Gold-Kaplan* at ¶ 34. This court's decision in *Gold-Kaplan* is instructive. Although generally detailing the decedent's anxious, confused, or paranoid state, the plaintiff was unable to testify that on or around the day the will was executed, the testator lacked capacity or was unduly influenced into executing the document. *Id.* It was therefore undisputed, according to the drafter of the will and a social worker present for the execution of the document, that the testator was of sound mind, knew the nature and extent of his property, knew the names of his relatives, and was not under any duress. *Id.* at ¶ 4; *see also Martin v. Dew*,

10th Dist. Franklin No. 03AP-734, 2004-Ohio-2520 (demonstrating the testator suffered from dementia is insufficient unless coupled with evidence demonstrating the lack of lucidity at the time the documents were executed); *Robinson v. Harmon*, 107 Ohio App. 206, 157 N.E.2d 749 (2d Dist.1958) (infirmities of old age are insufficient alone to prove a lack of testamentary capacity); *compare Stravarace v. Johnston*, 8th Dist. Cuyahoga No. 41640, 1980 Ohio App. LEXIS 12255 (May 30, 1980) (the basis for invalidating the will based on lack of capacity was because the testator at the time of execution was a terminally ill, hospitalized cancer patient, who was heavily medicated with drugs and unable to talk or communicate).

**{¶14}** In the current case, Kathryn failed to cite any evidence demonstrating a genuine issue of material fact supporting her claim that the trial court erred in granting summary judgment. App.R. 16(A)(7). Further, in independently reviewing the record, Kathryn solely relies on her self-serving allegations that either Hope Kinchen influenced her father into amending the trust or Gilbert lacked the capacity to understand the extent of his net worth on August 4, 2010. It is undisputed that Kathryn was not present on August 4, 2010, and, therefore, is not otherwise competent to testify about Gilbert's mental faculties at that time. *Gold-Kaplan*, 8th Dist. Cuyahoga No. 100015, 2014-Ohio-1424, at ¶ 34. The evidence from the affidavit of Gilbert's primary care physician suffers the same fate. Although Gilbert exhibited signs of confusion and senility, it was intermittent. Such evidence alone is insufficient to demonstrate that

Gilbert lacked capacity at the time he executed the amendment. *See Martin*, 10th Dist. Franklin No. 03AP-734, 2004-Ohio-2520.

{¶15} Further, even if the mere opportunity to exert influence were enough to substantiate the allegation of undue influence, defendants' undisputed evidence demonstrated that Gilbert consciously sought to amend the Trust to increase the funding to the family trust pursuant to his discussion with Attorney Yeh.[3] Kathryn's second and third assignments of error are overruled.

{¶16} In her first assignment of error, Kathryn claims the trial court erred in denying her leave to amend the complaint to include a claim for reformation. Kathryn claims that Gilbert was mistaken about his net worth when amending the Trust because he was worth less than $4 million, and there were no remaining assets with which to fund the marital trust. Kathryn's first assignment of error is without merit.

{¶17} We review a trial court's decision granting or denying a motion for leave to amend a complaint under an abuse of discretion standard. *Demmings v. Cuyahoga Cty.*, 8th Dist. Cuyahoga No. 98958, 2013-Ohio-499, ¶ 6, citing *Csejpes v. Cleveland Catholic Diocese*, 109 Ohio App.3d 533, 541, 672 N.E.2d 724 (8th Dist.1996). Although Civ.R. 15(A) expressly provides that leave of court shall be freely given when justice so requires, there is no absolute right to amend a complaint. *Id.* "[W]here a plaintiff fails to make a

---

[3]The record is replete with testimony demonstrating marital tension between Gilbert and Kathryn. In light of the fact that we find no merit to Kathryn's first assignment of error, we need not get into the evidentiary submissions substantiating the marital discord that may have precipitated the amendment to the trust.

prima facie showing of support for new matters sought to be pleaded, a trial court acts within its discretion to deny a motion to amend the pleading." *Id.*, quoting *Wilmington Steel Prods., Inc. v. Cleveland Elec. Illum. Co.*, 60 Ohio St.3d 120, 123, 573 N.E.2d 622 (1991). "Where an amendment to the complaint would have been futile, the trial court also does not abuse its discretion in denying the motion." *Id.*, citing *Perrin v. Bishop*, 8th Dist. Cuyahoga No. 64266, 1993 Ohio App. LEXIS 5736 (Dec. 2, 1993).

{¶18} In this case, Kathryn contends that reformation was necessary because Gilbert was mistaken about his net worth at the time he executed the amendment to the Trust. According to Kathryn's affidavit, Gilbert intended to leave her with half his estate. Gilbert's attorney, however, testified that the purpose of increasing the funding amount of the family trust was to pass the most tax-free money to his children based on the ever-changing federal estate tax deduction. According to Attorney Yeh, the sole purpose of including the marital trust was to reduce any tax burden, and thus, was an inclusion of convenience rather than testamentary intent. There was no discussion about the extent of Gilbert's net worth.

{¶19} Further, there is no evidence in the record that Gilbert intended an equal distribution of assets between the two portions of the Trust. Specifically, there is no evidence that the $2 million originally set to fund the family trust represented half Gilbert's estate, and reverting to the original trust would not have resulted in the marital trust being funded with half the estate's assets either. The estate was valued at less than $3 million. Accordingly, it is irrelevant whether Gilbert told Kathryn that he intended

that the marital trust be funded with half the estate's assets; that result would not be achieved by reverting to the original trust language. Dividing his estate evenly between the two trusts would have been simple if Gilbert had specified the funding amounts in terms of percentages rather than definitive sums. Reforming the trust to fund the marital trust with half of the estate's assets would, therefore, severely alter the terms of the original Trust as drafted, with no evidence that Gilbert intended such a distribution, much less the clear and convincing evidence required by R.C. 5804.15.

{¶20} In light of the uncontested evidence, Kathryn's first assignment of error is overruled. A trial court does not err in denying leave to amend a complaint for which the plaintiff is unable to demonstrate the factual basis for the newly asserted claim.

{¶21} The trial court did not err in denying Kathryn leave to amend her complaint to include a claim for reformation of the Trust, or in granting summary judgment in favor of defendants upon all claims. The decision of the trial court is affirmed.

It is ordered that appellees recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court, probate division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


SEAN C. GALLAGHER, PRESIDING JUDGE

EILEEN A. GALLAGHER, J., and
PATRICIA ANN BLACKMON, J., CONCUR