[Cite as *Schwartz v. Tedrick*, 2016-Ohio-1218.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

---

### JOURNAL ENTRY AND OPINION
### No. 102082

---

## ANN T. SCHWARTZ, ET AL.

### PLAINTIFFS-APPELLEES

vs.

## JOYCE A. TEDRICK

### DEFENDANT-APPELLANT

---

## JUDGMENT:
### AFFIRMED

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Probate Court Division
Case No. 2013 ADV 191264

**BEFORE:** Keough, J., Jones, A.J., and Laster Mays, J.

**RELEASED AND JOURNALIZED:** March 24, 2016

**ATTORNEYS FOR APPELLANT**

J. Paul Fidler
David M. Lenz
Schneider, Smeltz, Ranney & Lafond
1111 Superior Avenue, Suite 1000
Cleveland, Ohio 44114

Ryan P. Nowlin
1375 East Ninth Street, Suite 900
Cleveland, Ohio 44114

**ATTORNEYS FOR APPELLEES**

Charles T. Brown
Anthony J. Coyne
Miles Welo
Mansour Gavin, L.P.A.
North Point Tower
1001 Lakeside Avenue, Suite 1400
Cleveland, Ohio 44114

John P. Koscianski
Koscianski & Koscianski Co., L.P.A.
5700 Pearl Road, Suite 302
Parma, Ohio 44129

KATHLEEN ANN KEOUGH, J.:

{¶1} Defendant-appellant, Joyce A. Tedrick ("Tedrick"), appeals the judgments of the probate court that (1) set aside an amendment to a trust, (2) denied her motion to admit the deposition testimony of the decedent's lawyer, and (3) removed her as trustee. We affirm.

{¶2} This matter originated in the Cuyahoga County Probate Court on August 6, 2013, when siblings Ann T. Schwartz, Joseph M. Castellarin, Donald L. Castellarin, and Gregg S. Castellarin (collectively "appellees"), filed suit against Tedrick. Tedrick was married to appellees' father, Louis P. Castellarin ("Lou"). She was his second wife and nearly 20 years his junior.

{¶3} On June 6, 2012, Lou executed a Trust Agreement that, among other things, made specific gifts of $100,000 to each of his children. On August 31, 2012, less than three months after signing the Trust Agreement, Lou signed a Restatement of the Trust Agreement. The Trust Restatement differed from the Trust Agreement in only one material way: it removed the specific gifts to Lou's children that totaled $400,000.

{¶4} Appellees filed suit seeking to have the trial court: 1) find that Lou executed the Trust Restatement as the result of undue influence by Tedrick; 2) remove Tedrick as trustee and appoint a successor trustee; 3) order Tedrick to provide an accounting of all of Lou's trust assets; and 4) find that Tedrick tortuously and intentionally interfered with appellees' expected inheritance. Appellees also sought injunctive relief from the trial court to prevent Tedrick from making any distributions from the trust, or altering the

investment portion of the trust assets until the resolution of the matter. In addition, they sought an award of costs and fees, and punitive damages for Tedrick's intentional interference with their expectancy from the trust.

{¶5} The case was tried to the bench and on September 18, 2014, the trial court issued three judgment entries. The first denied Tedrick's motion for judgment on the pleadings. The second denied Tedrick's renewed motion to admit the deposition testimony of the attorney who prepared the Trust Agreement and Trust Restatement. The third entry set aside the Trust Restatement as resulting from undue influence and duress and removed Tedrick as trustee.

{¶6} Tedrick appealed from these judgments.

I. Final, Appealable Order

{¶7} Because the trial court's judgment did not address all of appellees' claims, this court ordered Tedrick to show cause why this appeal should not be dismissed for lack of a final, appealable order. If a lower court's order is not final, then an appellate court has no jurisdiction to review the matter and the appeal must be dismissed. *Gen. Acc. Ins. Co. v. Ins. of N. Am.*, 44 Ohio St.3d 17, 20, 540 N.E.2d 266 (1989).

{¶8} R.C. 2505.02 sets forth seven categories of final orders that may be reviewed, modified, or reversed. As relevant to this case, an order is a final order when it is an order that "affects a substantial right made in a special proceeding" or "grants or denies a provisional remedy for which no meaningful or effective remedy can be granted in a later appeal." R.C. 2505.02(B)(2) and (4).

**{¶9}** Tedrick argues that the trial court's order is final because it grants or denies a provisional remedy. She refers us to *In re Estate of Sneed*, 166 Ohio App.3d 595, 2006-Ohio-1868, 852 N.E.2d 234 (6th Dist.), and the cases cited therein, wherein courts have held that a court grants or denies a provisional remedy when it removes the executor of an estate. She urges that the same reasoning should apply to the removal of a trustee.

**{¶10}** Provisional remedies, however, are proceedings ancillary to an action. R.C. 2505.02(A)(3). Removal of the trustee was one of the major objectives of this suit. We cannot find that removal of the trustee in this case was "ancillary" to the action when that was the primary relief sought by the complaint. *Guardianship & Protective Serv. v. Setinsek*, 11th Dist. Trumbull No. 2010-T-0099, 2011-Ohio-6515, ¶ 16 (Wright, J., concurring) (removal of trustee was not a provisional remedy under R.C. 2505.02(B)(4) where the request to remove the trustee was set forth in a complaint filed at the outset of the action, and not made in a motion filed in a pending estate proceeding).

**{¶11}** Nevertheless, we find that the order removing Tedrick as trustee was final under R.C. 2505.02(B)(2) because it affects a substantial right and was made in a special proceeding. In *In re Estate of Janet N. Price*, 8th Dist. Cuyahoga No. 68628, 1995 Ohio App. LEXIS 4727 (Oct. 26, 1995), this court held that an appeal from the probate court's order denying an application to administer an estate was a final, appealable order because the order affected a substantial right and was made in a special proceeding. This court cited *Price* with approval in *In re Putka*, 8th Dist. Cuyahoga No. 77986, 2001 Ohio App. LEXIS 763 (Mar. 1, 2001), another case involving the probate court's denial of an

application for appointment as executor of the decedent's estate. Finding a split among the appellate courts regarding whether an appeal from the designation of an executor is a final, appealable order, the *Putka* court noted that this district concluded in *Price* that such orders are final because they are made in a special proceeding and affect a substantial right. *Putka* at fn. 1.

{¶12} That this case involves the probate court's decision regarding the trustee of a trust, rather than an executor of a will, is a distinction without a difference. In light of *Price* and *Putka*, we find that the trial court's order removing Tedrick as trustee is final and appealable because it affects a substantial right and was made in a special proceeding.

II.     Undue Influence and Duress

{¶13} In her first assignment of error, Tedrick contends that the trial court erred in finding that the Trust Restatement was the product of duress and undue influence and ordering that it be set aside.

{¶14} Undue influence is "'any improper or wrongful constraint, machination, or urgency of persuasion whereby the will of a person is overpowered and he is induced to do or forebear an act which he would not do or would do if left to act freely.'" *Kasick v. Kobelak*, 184 Ohio App.3d 433, 2009-Ohio-5239, 921 N.E.2d 297, ¶ 26 (8th Dist.), quoting *Ross v. Barker*, 101 Ohio App.3d 611, 618, 656 N.E.2d 363 (2d Dist.1995). With respect to wills and trusts, where an individual's influence restrains a testator from disposing of his or her property in accordance with the testator's own wishes and judgment and substitutes the wishes or judgments of another, such influence is undue.

*West v. Henry*, 173 Ohio St. 498, 501, 184 N.E.2d 200 (1962). The influence must bear directly on the act of making and executing the testamentary disposition. *Id.* The influence must "so overpower and subjugate the mind of the testator as to destroy his free agency and make him express another's will rather than his own." *Rich v. Quinn*, 13 Ohio App.3d 102, 103, 468 N.E.2d 365 (12th Dist.1983).

{¶15} Undue influence must be proven by clear and convincing evidence. *Kasick* at ¶ 26, citing *Ament v. Reassure Am. Life Ins. Co.*, 180 Ohio App.3d 440, 2009-Ohio-36, 905 N.E.2d 1246, ¶ 38 (8th Dist.). To make the requisite showing, a plaintiff must prove: (1) that the testator was susceptible; (2) another's opportunity to exert the influence; (3) the fact of improper influence exerted or attempted; and (4) the result showing the effect of such influence. *West*, *supra*.

{¶16} As to civil judgments, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as against the manifest weight of the evidence. *C.W. Morris Co. v. Foley Const. Co.*, 54 Ohio St.2d 279, 376 N.E.2d 578 (1978), syllabus. When considering whether a civil judgment is against the manifest weight of the evidence, an appellate court is guided by a presumption that the findings of the trier of fact were correct. *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 79-80, 461 N.E.2d 1273 (1984). "[A]n appellate court should not substitute its judgment for that of the trial court when there exists * * * competent and credible evidence supporting the findings of fact and conclusions of law rendered by the trial judge." *Id*. at 80.

**{¶17}** Here, the trial court set forth its findings of fact and conclusions of law in a nine-page judgment entry. It found that the original Trust Agreement signed on June 6, 2012, set forth Lou's stated intention to distribute $100,000 to each of his four children after his death. It found that Lou was aware at all times of the value of his assets and, contrary to Tedrick's testimony, there was no evidence that Lou amended the trust because he discovered his assets were less than what he thought they were. Instead, the court found that it was *Tedrick* who discovered during the summer of 2012 that Lou's assets were less than what *she* thought they were, and became alarmed that the amount remaining after distribution would not be sufficient for her.

**{¶18}** The trial court found that Lou's health declined significantly after a family trip to Italy in June 2012, and that he was desperately afraid of being moved to a nursing home. The court further found that Tedrick, who worked as a physician's assistant for over 30 years, acted as Lou's caregiver, but that she had become increasingly hostile toward him and had, on at least one occasion, left him for several days.

**{¶19}** The court found that Tedrick's trial testimony was evasive, especially about the circumstances by which the attorney who prepared the original Trust Agreement was contacted and instructed regarding amending the trust. The court noted that Tedrick offered little to no testimony about signing the Trust Restatement on August 31, 2012.

**{¶20}** Accordingly, the trial court found that:

due to his waning health, weakened condition, and dependence on the Defendant, the decedent was susceptible to undue influence. The Court further finds that the Defendant was in a position to exert undue influence and that in fact she did exert undue influence. The Court finds that the

result of the undue influence is the amended Trust, which is contrary to the decedent's stated intentions and not consistent with the testamentary dispositions the decedent otherwise would have made.

The Court finds that the Amendment to the Louis P. Castellarin Trust executed on August 31, 2012 was the result of duress and undue influence and orders that the Amendment is hereby set aside.

{¶21} We find that the trial court's determination was not against the manifest weight of the evidence because there was competent, credible evidence going to all the elements of appellees' claim of undue influence.

{¶22} The evidence at trial demonstrated that Lou, a former dentist and Case Western Reserve University professor, had a good relationship with his children and talked to and saw them weekly. Before his health began to deteriorate in the last few years of his life, he enjoyed golfing with his sons and watching his grandson play baseball.

{¶23} As Tedrick testified, Lou was astute with his finances; he had a budget and paid all of the bills, and he made all the investment decisions. Lou was open with his children about his estate planning; his son Joseph testified at trial that over the years, Lou had discussed his estate planning with his children and would periodically send them an updated will.

{¶24} In October 2011, Lou had a family meeting to discuss his assets and the contents of his trust and estate. Tedrick was in attendance at this meeting, as were three of Lou's four children. At this meeting, Lou openly discussed his house in Florida, his ownership interest in a shopping center, and his investment in a casino in Vietnam, an

investment that Lou was very enthusiastic about. During the meeting, Lou told his children that they would each receive $100,000 upon his death and any assets that were left when Tedrick died. After the meeting, Lou called his daughter Ann, who lived in New York, to advise her that each of the children would receive $100,000 upon his death. Lou's children had no further discussions with Lou about his estate planning after this meeting.

{¶25} On June 6, 2012, Lou signed a Trust Agreement that left specific gifts of $100,000 to each of his four children, and $25,000 to his close friend, John Turk. The Trust Agreement reflected exactly what Lou had told his family at the October 2011 meeting.

{¶26} Lou's friend John Turk, who had known Lou for 30 years and saw or spoke with him at least two or three times a week, testified that over the years, Lou spoke openly with him about his estate planning with him and that he was "very clear" that he wanted his children to get something from his estate. Turk said that Lou told him that he would receive $25,000 upon his death, and Tedrick and the children would also receive money. Turk testified that Lou told him that he had set up a trust, but never told him that he had amended it. Turk also testified that about a week before he died, Lou seemed distraught about things other than his health and told Turk that they needed to talk.

{¶27} Lou's health deteriorated significantly in the five years prior to his death in December 2012. Tedrick became his caretaker, in charge of his doctors' appointments, medications, and daily care. Lou's children, although grateful that Tedrick cared for

their father, were disturbed by her outward disdain for him. They testified that she was very resentful about her situation, and would call Lou names and belittle him in front of his family. Five to six years prior to Lou's death, Tedrick left him for several days and he did not know if she was coming back. Lou's daughter Ann testified that Lou told her that Tedrick "regularly" threatened to leave him, so he was careful not to upset her because he knew she was his caregiver and he was extremely fearful of having to go to a nursing home. Turk likewise testified that Lou told him that he feared Tedrick would leave him.

{¶28} In late June 2012, Lou and his extended family went to Italy for a ten-day family vacation. Lou's children Joseph, Donald, and Ann all testified that it was a wonderful family vacation for them and Lou. Lou became ill during the trip, however, and mostly stayed at the hotel. Upon his return from Italy, his health declined even further and he was mostly housebound.

{¶29} Lou's son Donald testified that shortly after the trip to Italy, Tedrick came to his office and asked to speak with him privately. He said that she was "visibly upset" about Lou's investment in the casino in Vietnam because she had learned that some of the monies that were supposed to go to her had been used for that investment. Tedrick told Donald that she planned to speak to Lou's investment broker and her financial adviser to "check into it." Donald testified that when he saw Tedrick about a month later, he asked her what had happened with the investment, and she stated, "I took care of it." He said

she no longer appeared upset about the investment and, after that conversation, did not mention the casino investment again.

{¶30} On August 31, 2012, unbeknownst to Lou's children, the Trust Agreement was amended. Lou died on December 11, 2012. After Lou's death, Tedrick made no mention of the trust until January 31, 2013, when Lou's son Joseph asked her about the intended disbursement to the children. Tedrick told Joseph that there would be no disbursement because the casino investment had gone bad. Subsequently, after Donald and Ann received certified letters from Tedrick's attorney advising them that Tedrick had removed them as co-trustees, and upon learning of the Trust Restatement, this litigation ensued.

{¶31} We find this evidence competent and credible to establish the four elements of the *West* test for undue influence. There was clearly evidence that Lou was a susceptible testator. The evidence demonstrated that Lou's health declined precipitously after he returned from Italy in July 2012. The evidence also established that Lou was extremely fearful of being placed in a nursing home, and that Tedrick, his wife and caregiver, regularly threatened to leave him, as she had previously done on at least one occasion. Although Tedrick contends that physical infirmity is not enough to establish susceptibility to influence, and that Lou was still mentally sharp, the evidence demonstrated that Lou was mentally susceptible to Tedrick's influence because of his deteriorating physical health, his dependence on Tedrick as his caregiver, his fear of

being placed in a nursing home if Tedrick was no longer able or willing to care for him, and Tedrick's regular threats to leave him.

**{¶32}** The evidence also established that Tedrick had ample opportunity to assert influence over Lou, the second element of the *West* test. She lived with Lou and was his caregiver. Lou was dependent upon her for food, medication, and daily care.

**{¶33}** With respect to the third element of the *West* test — that improper influence was exerted or attempted — Ohio courts have long recognized the inherent difficulty a plaintiff faces in proving allegations of undue influence and, accordingly, that "[t]he issues related to undue influence are generally determined upon circumstantial evidence and inferences drawn from a full presentation of facts that may be inconclusive when viewed separately." *Rich,* 13 Ohio App.3d at 104, 468 N.E.2d 365, citing *Bd. of Edn. v. Phillips*, 103 Ohio St. 622, 626, 134 N.E.646 (1921).

**{¶34}** We find that the timing of the Trust Restatement — less than three months after the original Trust Agreement was signed — coupled with Tedrick's discovery shortly before the amendment that the funds she thought would go to her had been used instead for the Vietnam casino investment, and her subsequent statement to Lou's son Donald Castellarin that she "took care of it" when he asked what she had done about her concerns about the investment, along with her evasive testimony about the circumstances of the amendment to the trust on August 31, 2012, demonstrate that Tedrick did, in fact, exert undue influence over Lou, an aging and infirm man who relied on her for his daily care.

**{¶35}** With regard to Tedrick's trial testimony, we note that Tedrick testified in detail about various events during the summer of 2012, but could not recall if she had any conversations with attorney Timothy Melena, the scrivener of the original Trust Agreement and Trust Restatement, prior to the amendment of the trust. She testified further that she could not recall if she saw a draft of the Trust Restatement prior to its execution. Upon our review of the record, we agree with the trial court's observation entry that "[t]he defendant's recollection of any information regarding calls or meetings with attorney Melena is incredibly sketchy, especially in light of her rather detailed memory of far less significant events during that same time period." We also find it significant that Tedrick did not call attorney Melena, a key witness, to testify at trial. One would think that if the amendment were, in fact, free from undue influence, Tedrick would have welcomed Melena's eyewitness testimony.

**{¶36}** The trial court's conclusion that Tedrick in fact exerted undue influence over Lou is further supported by evidence of what happened after Lou's death. Ann testified that in January or February 2013, she was shocked when she received a certified letter from Tedrick's attorney that removed her and her brother Gregg as co-trustees of the trust. There was no reason for Ann or Gregg's removal, other than Tedrick's continuation of her efforts to manipulate the trust for her benefit, without any oversight by Lou's children, the remainder beneficiaries of the trust.

**{¶37}** Contrary to Tedrick's argument, the trial court's finding that Tedrick actually exerted undue influence on Lou was not based on mere speculation; the evidence

clearly demonstrates the fact of her influence. Furthermore, her assertion that there was no undue influence because she would have eliminated the $25,000 gift to Turk if she actually exercised influence rings hollow in light of her refusal after Lou's death to pay Turk the $25,000.

{¶38} Finally, the fourth *West* element — the result showing the effect of the undue influence — is self-evident. The Trust Agreement provided $400,000 to Lou's children. The Trust Restatement eliminated these gifts completely, thereby increasing the trust corpus by $400,000 for Tedrick's sole and exclusive benefit. Furthermore, Tedrick's subsequent removal of Ann and Greg as co-trustees allowed her to have unbridled control of the trust without any accountability to Lou's children.

{¶39} Under R.C. 5804.06, a trust is void if its creation was induced by fraud, duress, or undue influence. The record in this case contains ample evidence to support the trial court's finding that the Trust Restatement was the result of Tedrick's undue influence.[1] Accordingly, the trial court properly declared the Trust Restatement void and reinstated the Trust Agreement. The first assignment of error is overruled.

III. Admission of Deposition Testimony

{¶40} Rather than subpoena attorney Timothy Melena to testify at trial, Tedrick orally moved to introduce his discovery deposition. When appellees' counsel objected, Tedrick's counsel asserted that a deposition can be admitted where the witness is out of

---

[1] In light of our affirmance of the trial court's finding of undue influence, Tedrick's argument that the trial court erred in also finding duress is moot.

the county in which the action is pending. When the trial judge stated that counsel was required to demonstrate a reason for using the deposition instead of having the witness testify, Tedrick's counsel stated, "We'll move on and come back to that." There was no further discussion of the matter during trial.

{¶41} The day after trial, however, Tedrick's counsel filed a renewed motion to admit Melena's deposition, arguing that Melena's deposition should be admitted under Civ.R. 32(A) because he "is located outside of Cuyahoga County, in Chardon, Ohio." The trial court subsequently denied the motion.

{¶42} In her second assignment of error, Tedrick contends that the trial court abused its discretion when it refused to allow her to present Melena's deposition at trial in lieu of his in-person testimony and then denied her renewed motion to admit the deposition.

{¶43} Decisions regarding the admission or exclusion at trial may not be reversed absent an abuse of discretion. *Peters v. Ohio State Lottery Comm.*, 63 Ohio St.3d 296, 299, 587 N.E.2d 290 (1992). "The term 'abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶44} Civ.R. 32(A)(3)(b) states that a witness's deposition may be introduced at trial if the court finds that "the witness is beyond the subpoena power of the court in which the action is pending or resides out of the county in which the action is pending

unless it appears that the absence of the witness was procured by the party offering the deposition[.]"

{¶45} It is well-established that the burden rests on the proponent of the deposition to satisfy the requirements of Civ.R. 32(A)(3). *Johnson v. Eitle*, 6th Dist. Lucas No. L-06-1247, 2007-Ohio-3315, ¶ 27, citing *Burnworth v. Ohio Bell Tel. Co.*, 5th Dist. Stark No. CA-9066, 1993 Ohio App. LEXIS 3768 (July 19, 1993). "Further, Civ.R. 32(A)(3), by its own terms, does not mandate the substitution of a deposition at trial." *Johnson* at *id.*

{¶46} Our review of the record demonstrates that Tedrick offered no evidence either at trial or in her renewed motion to admit Melena's testimony that Melena was served with a subpoena and failed to appear. Further, Tedrick offered no evidence that Melena was beyond the subpoena power of the trial court. Likewise, she offered no evidence whatsoever to support her assertion that he resided outside of Cuyahoga County. Accordingly, Tedrick failed to satisfy the requirements of Civ.R. 32(A), and thus we cannot find that the trial court abused its discretion by excluding the deposition from trial. *See, e.g., Branden v. Branden*, 8th Dist. Cuyahoga No. 91453, 2009-Ohio-866, ¶ 47 (no abuse of discretion in excluding deposition testimony from trial where proponent offered no evidence that witness was served with a subpoena and did not appear, was beyond the subpoena power of the court, or lived outside of Cuyahoga County). The second assignment of error is overruled.

IV.     Removal of Tedrick as Trustee

**{¶47}** In addition to finding that the Trust Restatement was void due to Tedrick's undue influence over Lou, the trial court removed Tedrick as trustee upon finding that she "failed to fulfill her duties under the Trust by refusing to make distribution to John Turk as required by both the original and the amended Trusts."

**{¶48}** In her third assignment of error, Tedrick contends that the trial court abused its discretion in removing her as trustee. She contends that her removal was "unnecessary and inappropriate," and that the trial court's basis for removing her was "insufficient."

**{¶49}** R.C. 2109.24 authorizes the trial court to remove a fiduciary for "habitual drunkenness, neglect of duty, incompetency, or fraudulent conduct, *because the interest of the trust demands it*, or for any other cause authorized by law." (Emphasis added.)

**{¶50}** The decision to remove a trustee is within the trial court's discretion, and a reviewing court will not reverse that decision absent a clear showing of abuse of that discretion. *In re Connell*, 8th Dist. Cuyahoga No. 68261, 1995 Ohio App. LEXIS 3470, *10 (Aug. 24, 1995).

**{¶51}** It could not be more clear in this case that the interest of the trust required Tedrick's removal as trustee. Although the trial court listed only Tedrick's nonpayment to Turk of the $25,000 specifically gifted to him as a reason for removing Tedrick, i.e., her failure to fulfill her duties as trustee, the record indicates by clear and convincing evidence that Tedrick's removal was necessary to protect the trust assets from any further manipulation by Tedrick for her benefit. The record is clear that Tedrick used undue

influence to amend the Trust Agreement for her benefit, and that she then removed Ann and Gregg as co-trustees in order to control trust assets without any accountability to Lou's children, the remainder beneficiaries. These actions unequivocally demonstrate Tedrick's willingness to manipulate trust funds for her sole benefit and, thus, her untrustworthiness as a fiduciary. Tedrick's assertion that there was no evidence that she committed "a serious breach of trust" sufficient to warrant her removal is specious. Her undue influence to manipulate the Trust Agreement to her benefit, at the expense of Lou's children, is by itself an egregious breach of trust that demonstrates she is untrustworthy to act in a fiduciary capacity regarding the trust.

**{¶52}** The record supports that the trial court did not abuse its discretion in removing Tedrick as trustee. The third assignment of error is overruled.

V.     Judgment on the Pleadings

**{¶53}** In her fourth assignment of error, Tedrick contends that the trial court erred in denying her Civ.R. 12(C) motion for judgment on the pleadings regarding appellees' undue influence claim.[2]

**{¶54}** Civ.R. 12(C) states that "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." The determination of a motion for judgment on the pleadings is restricted solely to the

---

[2]Tedrick's motion sought dismissal of all of appellees' claims but Tedrick only challenges the trial court's ruling regarding the undue influence claim.

allegations in the pleadings and any writings attached to the complaint. *Peterson v. Teodosio*, 34 Ohio St.2d 161, 165-166, 297 N.E.2d 113 (1973).

{¶55} Under Civ.R. 12(C), dismissal is appropriate where a court (1) construes the material allegations in the complaint, with all reasonable inferences to be drawn therefrom, in favor of the nonmoving party as true, and (2) finds beyond doubt that the plaintiff could prove no set of facts in support of his claim that would entitle him to relief. *State ex rel. Midwest Pride IV, Inc. v. Pontious*, 75 Ohio St.3d 565, 570, 664 N.E.2d 931 (1996). Thus, the granting of judgment on the pleadings is only appropriate where the plaintiff has failed to allege a set of facts that, if true, would establish the defendant's liability. *Johnson v. Keybank*, 8th Dist. Cuyahoga No. 100118, 2014-Ohio-120, ¶ 11. We review a ruling on a motion for judgment on the pleadings de novo. *Coleman v. Beachwood*, 8th Dist. Cuyahoga No. 92339, 2009-Ohio-5560, ¶ 15.

{¶56} Tedrick contends that appellees' allegations failed to give them "fair notice" of the undue influence claim because they failed to plead that Lou was a susceptible testator, one of the elements required to prove undue influence. We disagree. Appellees alleged that less than three months after signing the Trust Agreement, Lou signed the Trust Restatement that made Tedrick the sole beneficiary, and deprived his children of the benefits Lou intended them to have at his death. Drawing all reasonable inferences from these allegations in favor of appellees, it is apparent that appellees alleged sufficient facts that, if true, would support their claim of Tedrick's undue influence. Moreover, Tedrick had fair notice that appellees were asserting an undue

influence claim. As the trial court stated in its judgment entry denying the motion, "defendant's articulation of the plaintiffs' claims and her defense thereto demonstrate that the plaintiffs have adequately set forth their cause of action."

{¶57} The trial court properly denied Tedrick's Civ.R. 12(C) motion for judgment on the pleadings. The fourth assignment of error is overruled.

{¶58} Judgment affirmed.

It is ordered that appellees recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


_____

KATHLEEN ANN KEOUGH, JUDGE

LARRY A. JONES, SR., A.J., and
ANITA LASTER MAYS, J., CONCUR