MILLER, APPELLANT, *v.* PPG INDUSTRIES, APPELLEE.

(No. 87 CA 14—Decided May 3, 1988.)

*James R. Kingsley,* for appellant Polly Miller.

*Charles H. Waterman,* for appellee PPG Industries.

*Anthony J. Celebrezze, Jr.,* attorney general, and *Paul Hancock,* for appellee Attorney General.

ABELE, J. This is an appeal from a Pickaway County Common Pleas Court summary judgment granted on August 19, 1985, and made final on March 31, 1987. Appellant filed her complaint on February 10, 1984, alleging, *inter alia,* that appellee PPG Industries failed to comply with the Pickaway Township Zoning Code

when planning its hazardous waste incinerator, that the proposed incinerator will constitute a nuisance, and that R.C. 3734.05(D)(3) is unconstitutional. Appellant prayed for judgment ordering PPG Industries to comply with the Pickaway Township Zoning Code, and prohibiting PPG Industries from constructing or operating its proposed hazardous waste facility in Pickaway Township, and declaring R.C. 3734.05(D)(3) unconstitutional.

On August 19, 1985, the court granted PPG Industries' motion for summary judgment and dismissed all of the complaint except the nuisance claim. On March 31, 1987, the court dismissed the nuisance claim for want of prosecution.

We affirm.

Assignment of Error I

"The court erred to the prejudice of the plaintiffs when it did not find O.R.C. 3734.05(D)(3) unconstitutional because it was enacted in violation of Article Two, Section 15(D), the clear title requirement."

Appellant contends that the bill which contained R.C. 3734.05(D)(3) violates the "clear title" requirement of Section 15(D), Article II of the Ohio Constitution, which provides in pertinent part:

"No bill shall contain more than one subject, which shall be clearly expressed in its title. * * *"

Appellant, however, neglected to cite or submit a copy of the bill which contained the original enactment of R.C. 3734.05(D)(3).

For purposes of simplicity, we will assume, as appellant appears to assume, that R.C. 3734.05(D)(3) was enacted in a single bill along with the remainder of the statute. We will further assume that the single bill was, as appellant alleges, the bill "reenacted by the Senate on June 26, 1984, Am. Sub. H.B. No. 506." We will not address questions of whether the legislature, when amending a statute, must be certain even *unchanged* portions of the statute comply with the "one-subject" and "clear title" requirements of Section 15(D), Article II of the Ohio Constitution.

In *Hoover* v. *Bd. of Franklin Cty. Commrs.* (1985), 19 Ohio St. 3d 1, 19 OBR 1, 482 N.E. 2d 575, the court followed a long line of cases which reject a strict interpretation of the "one-subject" requirement of Section 15(D), Article II of the Ohio Constitution:

"Under this court's recent holding in *State, ex rel. Dix,* v. *Celeste* (1984), 11 Ohio St. 3d 141, a 'manifestly gross and fraudulent violation' of the one-subject rule contained in Section 15(D) will invalidate an enactment. *Id.* at syllabus. As we emphasized in *Dix,* every presumption in favor of the enactment's validity should be indulged. The mere fact that a bill embraces more than one topic is not fatal, as long as a common purpose or relationship exists between the topics. * * *" *Id.* at 6, 19 OBR at 5, 482 N.E. 2d at 580.

We have reviewed the entire statute and find the statute, if enacted in a single bill, does not violate the "one-subject" requirement of Section 15(D). A common purpose exists between the topics in the statute. All parts of the statute relate to Ohio's regulatory scheme for hazardous waste facilities.

Appellant reluctantly agrees that the statute, if enacted in a single bill, does not violate the "one-subject" requirement of Section 15(D). However, appellant argues that the statute, when "reenacted by the Senate on June 26, 1984, Am. Sub. H.B. No. 506," contained a title which violates the "clear title" requirement of Section 15(D). She contends the title of the bill should have mentioned "zoning." We disagree.

Appellant cites no authority which would require a stricter interpretation of the "clear title" portion of Section 15(D) than exists for the "one-subject" portion of that section. In view of *Hoover, supra,* we find the title of Am. Sub. H.B. No. 506 to be sufficiently clear to satisfy the "clear title" requirement of Section 15(D). The title of the bill states the bill will amend R.C. 3734.05 and will concern hazardous waste facilities. The title of the bill conveys the common purpose and relationship between the topics of the bill.

Appellant's first assignment of error is overruled.

Assignment of Error II

"The trial court erred to the prejudice of the plaintiffs when it did not find O.R.C. 3734.05(D)(3) unconstitutional because:

"A. Zoning is a police power reserved by the Constitution to the people and such right is paramount to a legislative power delegated to an administrative board, that is, the decision of the body politic is superior to that of an administrative agency.

"B. Such preemption allows the board to act in excess of the powers granted to it by enabling legislation.

"C. The legislation cannot preempt a power that is not as a matter of law incompatible."

R.C. 3734.05(D)(3) permits the Ohio Hazardous Waste Facility Board to bypass local zoning when siting hazardous waste facilities in the state:

"No political subdivision of this state shall require any additional zoning or other approval, consent, permit, certificate, or other condition for the construction or operation of a hazardous waste facility authorized by a hazardous waste facility installation and operation permit issued pursuant to this chapter, nor shall any political subdivision adopt or enforce any law, ordinance, or regulation that in any way alters, impairs, or limits the authority granted in the permit."

In *Clermont Environmental Reclamation Co.* v. *Wiederhold* (1982), 2 Ohio St. 3d 44, 2 OBR 587, 442 N.E. 2d 1278, the court declared the statute constitutional.

Appellant seeks to distinguish *Clermont* from the case at bar. Appellant contends *Clermont* left open the question of whether the statute might unconstitutionally limit zoning powers which the General Assembly has granted to townships. Appellant bases her contention upon the following language in *Clermont* at 47, 2 OBR at 589, 442 N.E. 2d at 1280-1281:

"The appellant township seeks the declaration by this court that R.C. 3734.05(D)(3) is unconstitutional, *not upon the basis that it questions the power of the General Assembly to limit the zoning powers* that body has conferred upon townships pursuant to R.C. Chapter 519, such as has been done in regard to agricultural use and public utility use, but, rather, upon the basis that this section of law would attempt to limit the home rule powers of municipalities in violation of Section 3, Article XVIII of the Ohio Constitution." (Emphasis added.)

A quick review of the *Clermont* case reveals appellant misinterprets the above-quoted and emphasized language. The appellant township in *Clermont* argued the General Assembly has no power to limit the home rule powers given to municipalities by Section 3, Article XVIII of the Ohio Constitution, and therefore R.C. 3734.05(D)(3) will affect townships and municipalities differently. The appellant township contended the statute thus does not have uniform operation

throughout the state as is required by Section 26, Article II of the Ohio Constitution.

The *Clermont* court rejected the appellant township's contention. The court found R.C. 3734.05(D)(3) is a general law enacted pursuant to the police powers of the state, and hence the statute overrides any conflicting municipal ordinances.

Contrary to appellant's assertions in the case at bar, the *Clermont* court did not leave open the question of whether R.C. 3734.05(D)(3) might be unconstitutional in the sense it limits the zoning powers conferred on townships by the General Assembly. Quite to the contrary, the court implicitly noted that the General Assembly, which bestows zoning powers upon townships, has the power to limit those powers.

Appellant's second assignment of error is overruled.

Assignment of Error III

"The court erred to the prejudice of the plaintiffs when it found a siting permit is not government action and such permit which decreases land value is not a 'taking' under Section 19, Article I of the Ohio Constitution entitling plaintiffs to compensation."

Appellant contends the siting of a hazardous waste facility near her property has decreased the value of her property, and hence such a siting is a "taking" under Section 19, Article I of the Ohio Constitution. We disagree.

In *McKee* v. *Akron* (1964), 176 Ohio St. 282, 284-285, 27 O.O. 2d 197, 198, 199 N.E. 2d 592, 594, the court wrote:

"Cases in which compensation has been awarded under a provision similar to Section 19, Article I, involve more than a loss of market value or loss of the comfortable enjoyment of property. Ordinarily in order to constitute a taking, the governmental activity must physically displace a person from space in which he was entitled to exercise dominion consistent with the rights of ownership."

In the case at bar, appellant makes no allegation that she has been or will be physically displaced from her property. Accordingly, we agree with the lower court that no "taking" has occurred.

Contrary to appellant's assertions, we find *First English Evangelical Lutheran Church of Glendale* v. *Los Angeles* (1987), 482 U.S. 304, lends no support to her position. In that case, the court held a "taking" had occurred where a landowner was temporarily denied *all* use of his property. Appellant has not, even temporarily, been denied the use of her property.

Appellant's third assignment of error is overruled.

*Judgment affirmed.*

SEPHENSON, J., concurs.

GREY, P.J., concurs separately.

GREY, P.J., concurring. I concur in the judgment and opinion since it accurately applies the law as it currently exists. However, I believe the court system should re-think its position on incidental damages arising out of siting procedures which supersede ordinary zoning.

The whole concept of zoning is based on the premise that some land uses are offensive to surrounding landowners. Zoning creates zones where certain offensive uses may be carried on, but away from areas where they would be objectionable. Without zoning, the courts would be swamped with private nuisance suits. Implicit in the very concept of zoning is that some legal uses may have a deleterious effect on the health, safety and value of the surrounding property.

Waste disposal is not amenable to zoning. Nobody wants a dump next

door. So the legislature has adopted siting procedures which are not subject to zoning. Since, siting procedures are necessary to protect the overall good, the costs of siting procedures should be borne by society in general.

Nobody would reasonably deny that when a dump moves in, the value of the surrounding property goes down. When we select a certain site because it scientifically and environmentally is the best location, we as a society are making a decision which balances the interests of people overall against the interests of the people who own property nearby. There is nothing wrong with drawing this kind of balance.

. However, we ought to have the decency to pay for what we obtain. If society's waste is gathered together and transported away from where most people live, most people are benefitted. But when it is transported to a certain location, the people in that location are harmed economically. Ordinarily zoning and the state's policy of not deliberately violating local zoning law generally will protect people, and this is why we have the rule in *McKee, supra, i.e.,* that absent a physical taking there is no damage. But hazardous waste is an exception. Since it is an exception to the ordinary zoning law, it likewise ought to be an exception to the ordinary law of condemnation.

Hazardous waste has required us to re-think our whole disposal system. We cannot simply dump these products, but must see that they are properly disposed of, and we must incur the necessary costs. We cannot make those costs go away. One sure and certain cost is the decrease in value of property surrounding a dump site. By denying the economic reality of hazardous waste siting, we only shift the burden of that cost to an unfortunate few.

If anyone challenges the need for a change in Ohio law, I would ask, *arguendo:* "Would your position be the same if someone planned to put a dump site next to your property?"

In all fairness, the Supreme Court should review its position on what constitutes a taking in hazardous waste siting cases.