[Cite as *State ex rel. Jeffers v. Athens Cty. Commrs.*, 2016-Ohio-8119.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ATHENS COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, EX REL., | : | |
| RICHARD JEFFERS, | : | |
| | : | Case No. 15CA27 |
| Plaintiff/Relator-Appellant, | : | |
| | : | |
| vs. | : | |
| | : | <u>DECISION AND JUDGMENT</u> |
| ATHENS COUNTY | : | <u>ENTRY</u> |
| COMMISSIONERS, ET AL. | : | |
| | : | |
| Defendants/Respondents- | : | |
| Appellees. | : | **Released: 12/06/16** |

_____

<u>APPEARANCES:</u>

John P. Lavelle and Robert R. Rittenhouse, Lavelle and Associates, Athens, Ohio, for Appellant Richard L. Jeffers.

Mark Landes and Aaron M. Glasgow, Isaac Wiles Burkholder & Teetor, LLC, Columbus, Ohio, for Appellee Board of County Commissioners of Athens County, Ohio.

Keller Blackburn, Athens County Prosecutor, for Appellee Board of County Commissioners of Athens County, Ohio.[1]

Robert H. Stoffers and Michael S. Loughry, Mazanec, Raskin & Ryder Co., L.P.A., Columbus, Ohio, for Appellee and Cross-Appellant Board of Trustees of Alexander Township, Ohio.

_____

---

[1] The Athens County Prosecutor has not participated in this appeal.

Per Curiam.

{¶1} Appellant Richard Jeffers appeals the following decisions and judgment entries of the Athens County Common Pleas Court:

> 1. The June 23, 2015 "Decision on Motion to Lift Stay of the Constitutional Claims; (sic) To Allow Additional Causes of Action to be Presented"; and,
>
> 2. The October 8, 2013 "Nunc Pro Tunc Decision and Judgment on Complaint for Writ of Mandamus; Final Appealable Order."

Jeffers contends the trial court erred by: (1) concluding that a pro tanto taking of his property did not occur, and thus, denying and dismissing his complaint for a writ of mandamus; (2) dismissing his remaining Section 1983, Title 42, U.S. Code claims based on the doctrine of issue preclusion; and (3) denying his motion for leave to amend his complaint to assert additional claims. For the reasons which follow, we find no merit to the arguments made under Appellant's first and third assignments of error. However, we sustain the second assignment of error. Accordingly, we affirm the judgment in part, reverse in part, and remand the matter to the trial court for further proceedings consistent with this opinion.

FACTUAL AND PROCEDURAL BACKGROUND

{¶2} Richard Jeffers owns approximately 530 acres in Alexander Township, Athens County, Ohio. In 2004, the Athens County Board of

Commissioners ("Board"), voted to vacate Red Lane Road and Jeffers Road, public roads which abut Jeffers' property. Since 2004, litigation between Jeffers and the defendants, Board, and the Board of Trustees of Alexander Township ("Trustees") has continued. At the outset, Jeffers alleged a de facto taking of his property and collusion between county officeholders and entities in doing so. More than once, the parties and this Court have commented on the "tortured history" of the Jeffers' matter, which has made its way to this Court on several occasions. See *Bd. of Cty. Commrs. of Athens Cty. v. Goldsberry,* 4th Dist. Athens No. 05CA18, 2005-Ohio-4705; and *Jeffers v. Athens County Commrs.,* 4th Dist. Athens No. 06CA39, 2007-Ohio-2458, paragraphs 2-5, ("*Jeffers I*") for a detailed factual and procedural history.

{¶3} Relevant to the case before us now on appeal, Jeffers filed a petition requesting a writ of mandamus to order the Board to institute damages proceedings pursuant to Chapter 163 of the Ohio Revised Code. Jeffers later amended his complaint to add various claims for money damages under Section 1983, Title 42, U.S. Code. On April 5, 2010, the trial court issued the writ of mandamus. The Board appealed. In *Jeffers v. Athens County Commrs.*, 4th Dist. Athens Nos. 10CA3, 10CA15, 2011-Ohio-675, ¶ 5, ("*Jeffers II*"), we held the trial court did not abuse its

discretion in ordering the Board to comply with Revised Code Chapter 163.

*Jeffers II* was decided on February 9, 2011.

{¶4} However, in April 2011, the Board voted to rescind its prior decisions to vacate the two roads. Jeffers appealed this decision. The Board also filed a motion to dismiss Jeffers' constitutional claims. On September 6, 2011, the trial court issued a decision denying the Board's motion to dismiss. The trial court further found Appellant was not entitled to R.C. 163 proceedings because, in the interim, the vacation process had been abandoned prior to there being a legal taking of Jeffers' property.

{¶5} In the September 6, 2011 decision, however, the trial court also held there was a disputed issue of fact as to whether the Board physically interfered with Jeffers' use of his roads to such an extent that there was a pro tanto taking of his property. The trial court subsequently scheduled a bench trial to hear evidence regarding the alleged interference. On September 8, 2011, Jeffers filed a motion to lift the stay of his constitutional claims and further requested permission to amend his complaint to assert a claim for retaliation and promotion of Ex Post Facto legislation in order to unlawfully affect his constitutional rights.

{¶6} The trial court heard the mandamus action on October 9 and 10, 2012. The court heard testimony from various witnesses. Additional facts

gleaned from the witnesses' testimony will be set forth below, where relevant. Counsel filed post-trial briefs. On May 10, 2013, the trial court found as follows:

> "[T]he Court finds that a pro tanto taking of relator's property has not occurred, due to a lack of the prerequisite substantial or unreasonable interference with relator's property rights. Relator does not have a clear legal right to the commencement of R.C. Chapter 163 appropriation proceedings. Therefore, his complaint for a writ of mandamus is denied and dismissed at his cost."

**{¶7}** Jeffers appealed. On October 7, 2013, this court found the trial court's decision was not a final appealable order. On October 8, 2013, the trial court filed a nunc pro tunc decision and judgment. However, on November 5, 2013, this Court again found the order not final and appealable due to Jeffers' remaining outstanding and unresolved Section 1983 claims.

**{¶8}** In April 2014, the parties filed briefs arguing the merits of the remaining federal claims. On June 23, 2015, the trial court dismissed Jeffers' federal claims, based on the doctrine of issue preclusion, and denied Jeffers' motion for leave to amend his complaint to add additional federal claims.

**{¶9}** On July 22, 2015, Jeffers' timely appeal of the trial court's October 8, 2013 and June 23, 2015 decisions followed. In addition, the Trustees assert one cross-assignment of error.

ASSIGNMENT OF ERROR ONE

"I. THE TRIAL COURT ABUSED ITS DISCRETION IN CONCLUDING THAT APPELLANT FAILED TO PROVE THAT THERE WAS A SUBSTANTIAL OR UNREASONABLE INTERFERENCE WITH HIS PROPERTY RIGHTS."

## A.  STANDARD OF REVIEW

{¶10} We review a trial court's decision on whether to issue a writ of mandamus under the abuse of discretion standard. *Jeffers II, supra,* at ¶ 27; *Athens Cty. Commrs. v. Ohio Patrolmen's Benevolent Assn.,* 4th Dist. Athens No. 06CA49, 2007-Ohio-6895, at ¶ 45, citing *Truman v. Village of Clay Center,* 160 Ohio App.3d 78, 825 N.E.2d 1182, 2005-Ohio-1385, (6th Dist.), at ¶ 16.  "An abuse of discretion connotes more than a mere error of judgment; it implies that the court's attitude is arbitrary, unreasonable or unconscionable." *Jeffers II, supra,* at ¶ 14, quoting *Pryor v. Pryor,* 4th Dist. Ross No. 09CA3096, 2009-Ohio-6670, at ¶ 22, citing *Blakemore v. Blakemore,* 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).  In order to demonstrate an abuse of discretion, "the result must be so palpably and grossly violative of fact or logic that it evidences not the exercise of will but the perversity of will, not the exercise of judgment but the defiance of judgment, not the exercise of reason but instead passion or bias." *Nakoff v.*

*Fairview Gen. Hosp.,* 75 Ohio St.3d 254, 256, 1996-Ohio-159, 662 N.E.2d 1.

## B.  LEGAL ANALYSIS

{**¶11**} "Mandamus is a writ, issued in the name of the state to an inferior tribunal, a corporation, board, or person, commanding the performance of an act which the law specially enjoins as a duty resulting from an office, trust, or station." *Jeffers II, supra*, at ¶ 26; R.C. 2731.01. " 'Mandamus is the appropriate action to compel public authorities to institute appropriation proceedings where an involuntary taking of private property is alleged.' " *State ex rel. Duncan v. Mentor City Council,* 105 Ohio St.3d 372, 826 N.E.2d 832, 2005-Ohio-2163, at ¶ 11, quoting *State ex rel. Shemo v. Mayfield Hts.,* 95 Ohio St.3d 59, 63, 765 N.E.2d 345, 2002-Ohio-1627.  As we previously stated in *Jeffers II,* in order to be entitled to a writ of mandamus, Jeffers must establish that he had a clear legal right to the requested relief, that the Board had a corresponding clear legal duty to comply, and that Jeffers has no adequate remedy in the ordinary course of the law. *Jeffers II, supra,* at ¶ 27. See *State ex rel. Savage v. Caltrider,* 100 Ohio St.3d 363, 800 N.E.2d 358, 2003-Ohio-6806, at ¶ 8, citing *State ex rel. Ferguson v. Court of Claims of Ohio, Victims of Crime Div.,* 98 Ohio St.3d 399, 786 N.E.2d 43, 2003-Ohio-1631, at ¶ 10.  The Supreme Court of Ohio

has held that the appropriate standard of proof in mandamus cases is proof

by clear and convincing evidence. *State ex rel. Doner v. Zody,* 130 Ohio

St.3d 446, 2011-Ohio-6117, 958 N.E.2d 1235, ¶ 55; *State ex rel. Pressley v.*

*Indus. Comm.,* 11 Ohio St.2d 141, 161, 228 N.E.2d 631 (1967); *State ex rel.*

*Henslee v. Newman*, 30 Ohio St.2d 324, 325, 59, 285 N.E.2d 54 (1972),

Ohio Jurisprudence 2d (1959) 285, Section 37.

{¶12} Under the first assignment of error, Jeffers contends the trial

court erred and abused its discretion when it denied his complaint for a writ

of mandamus.  Jeffers asserts that he submitted a totality of clear and

convincing evidence at trial that there had been substantial or unreasonable

interference with his property rights.  However, the Board urges affirmance

of the trial court's decision.  The Board points out the trial court heard

multiple witnesses and two days of testimony regarding Jeffers' use of his

property.  Jeffers submitted over 70 exhibits.  The trial court also reviewed

the record and considered lengthy post-trial briefs of the parties.  The Board

argues Jeffers failed to demonstrate the obstructions placed on the roads

were placed there by the Board, that the obstructions interfered with Jeffers'

use or access for extended periods of time, or that his claims regarding his

subdivision plans and the marketability of his land were anything but

speculation.  Upon review of the evidence submitted at trial, we agree with

the trial court's decision.  Jeffers failed to prove that he was deprived of all economically valuable uses of his property as a consequence of government action.

{¶13} The Fifth Amendment to the United States Constitution, made applicable to the States by virtue of the Fourteenth Amendment, guarantees that private property shall not "be taken for public use, without just compensation." *Morris v. Chillicothe,* 4th Dist. Ross No. 1720, 1991 WL 207246 (Oct. 2, 1991), *3.  Analogously, Article I, Section 19 of the Ohio Constitution provides as follows:

> "Private property shall ever be held inviolate, but subservient to the public welfare. * * * Where private property shall be taken for public use, a compensation therefore shall first be made in money * * *." *Id.*

{¶14} The determination that governmental action constitutes a taking is, in essence, a determination that the public at large, rather than a single owner, must bear the burden of an exercise of state power in the public interest, with the question necessarily requiring a weighing of private and public interests. *Morris, supra,* citing *First Lutheran Church v. Los Angeles County*, 482 U.S. 304, 318-319 (1987); *Agins v. Tiburon*, 447 U.S. 255, 260, 100 S.Ct. 2138 (1980) (abrogated by *Linger v. Chevron U.S.A. Inc.,* 12 S.Ct. 2074, 544 U.S. 528 (2005).  Property interests protected by the Fifth and Fourteenth Amendments to the United States Constitution and by Article I,

Section 19, of the Ohio Constitution are diverse and extend beyond actual fee ownership of real estate, and include the property owner's absolute right of dominion, use or disposition over it. Knepper and Frye, Ohio Eminent Domain Practice (1977) 155, Sec. 6.01; *Lucas v. Carney*, 167 Ohio St. 416, 423, 149 N.E.2d 238 (1958); *City of Mansfield v. Balliett*, 65 Ohio St. 451, 471, 63 N.E. 86 (1901).

{¶15} Ordinarily in order to constitute a taking, the governmental activity must physically displace a person from space in which he was entitled to exercise dominion consistent with the rights of ownership. *Morris, supra,* at *4. However, in *Morris* we also observed that physical displacement is not always necessary. *Id.* A taking may also be found where it is clear that the injury sustained by a person differs substantially in kind from that sustained by others in the neighborhood, even though there has been no physical displacement. *Id.* And, the fact that property is rendered less desirable as a result of the governmental activity does not in and of itself constitute a taking so as to entitle the owner thereof to compensation. *Id*. See also *Miller v. PPG Industries*, 48 Ohio App.3d 20, 23, 547 N.E.2d 1216 (4th Dist.1988).

{¶16} In the absence of a physical taking of property, a taking occurs only where there is a substantial interference with the rights of ownership of

private property. *Seiler v. Norwalk,* 949 N.E.2d 63 2011-Ohio-548, (6th Dist.) ¶ 46; *Smith v. Erie RR. Co.*, 134 Ohio St. 135, 16 N.E.2d 310 (1938). Any such substantial interference with the rights of ownership of private property is deemed to be a taking pro tanto. *Seiler, supra; J.P. Sand & Gravel Co. v. State,* 51 Ohio App.2d 83, 89-90, 367 N.E.2d 54 (1976).

{¶17} To establish a taking, the landowner must prove that the state entity caused a "substantial or unreasonable interference with [his] property right[s]." *Seiler, supra,* at ¶ 47, quoting *State ex rel. OTR v. Columbus,* 76 Ohio St.3d 203, 206, 667 N.E.2d 8 (1996). This right is applicable even when the owner is only partially deprived of the uses of his land. The rationale behind recognizing a pro tanto taking is that the act of depriving an owner of any valuable use of his land is the equivalent of depriving him of his land. *Id.* at 207. The issue in a taking is not whether the public entity acted negligently or contrary to its authority. Rather, the issue is solely whether the landowner was deprived of an economically valuable use of his property as a consequence of governmental action. *Masley v. Lorain,* 48 Ohio St.2d at 341, 358 N.E.2d 596 (1976), and *Carney*, *supra,* 167 Ohio St. at 423.

{¶18} Appellant testified he had farmed all of his life. He had owned his acreage in Alexander Township, since the early 1970's. In particular,

"Jeffers Lane," was the only public road bordering a 78-acre tract of land. "Red Lane," was the only public road bordering a 23-acre tract of land.[2] These were the roads sought to be vacated in 2004. With these roads vacated, Jeffers' tracts would be landlocked. He testified the two tracts had been used for agricultural purposes since he first owned them until the present time and acknowledged he has always received a tax incentive for using the land for agricultural purposes.

{¶19} Appellant testified he appeared before the Trustees in 2002 to discuss a subdivision he was planning. The only access for the subdivision would be via Red Lane and he also believed the Board was supportive of his project. He was working on the subdivision full time. He identified Planning Commission records which demonstrated steps he had taken to begin the planning process, and a letter from the Board indicating they would approve a sewage treatment facility to support his subdivision if it met applicable standards. Between 90 and 180 lots were planned. He also testified he had hired Paul Mara of Mara Engineering and also retained surveyors and he spent a great deal of money in the engineering, surveying and planning of the subdivision.

---

[2] Jeffers Road is also known as "Township Road 554." Red Lane is known as "Township Road 548."

{¶20} Appellant testified sometime in 2003, after he was improving Red Lane and moving forward, he learned of a petition being circulated to vacate Red Lane. Later on, an abutting landowner circulated a petition to vacate Jeffers Road. Appellant testified he made his opposing view known and attended all the public viewings and hearings on the petitions. At a Trustee meeting on August 10, 2004, he asked the trustees to grade his roads. He testified he was informed the roads were closed and the Trustees were not responsible to maintain the closed roads. He then sought legal counsel.

{¶21} After the trial court ruled that the original vacation proceeding was void, the Trustees circulated another petition. Appellant again attended all meetings to protest. At the September 28, 2004 meeting, Commissioner Lenny Eliason informed him that the roads were vacated and closed to the public until the court ruled otherwise. Appellant testified his adjoining neighbors were present at this meeting.

{¶22} He testified subsequently, in the fall and winter of 2004, the township road signs were taken down and replaced with "no trespassing" signs and identified photographs of the signs and a metal gate with chain on Jeffers Road. He also identified photographs of "no trespassing" signs and

hay bales placed on Red Lane. The signs were placed during the summer of 2004.

{¶23} In January 2005, Appellant consulted the Athens County Sheriff's Office to advise them of the locked gate and of the legal proceedings which had commenced. He advised the sheriff's office he could not get in to feed his cattle. He subsequently used bolt cutters to cut the chain. He then went to the sheriff's department and spoke with Lt. Darrell Cogar to file a complaint.

{¶24} Appellant testified thereafter he received a letter from Lt. Cogar, on behalf of the Athens County Sheriff's Office. Lt. Cogar later testified he was familiar with narrative reports and incident reports coming into the sheriff's office and maintained in the ordinary course of business. He identified several reports called in by Mr. Jeffers, as well as the letter he sent to Jeffers. Jeffers testified and Lt. Cogar read the letter into the record, which stated that the county prosecutor advised the matter of the road vacations was a civil issue. The letter further advised the sheriff's department would not be involved.

{¶25} He further testified to the interference with his property rights as follows:

> " * * * I was very limited with what I could do with the
> property. I'd worked a hundred hours a week for forty-five

years and I was ready to slow down and retire and I wanted to sell this ground. And all at once I was forced to use it as a farm (inaudible) only. And then I was afraid every time I would go in there would be a Sheriff's cruiser there when I came back. You know. And every opportunity I had to sell property there was this stigma over it. I couldn't show it. I couldn't sell it. And I just felt like my violates, my rights had been violated by my neighbors that I didn't dream would shut me off from my farm. It was, you know, I was forced to use the land for agricultural purposes only. And I was blocked from nay opportunity to sell it at a decent price."

{¶26} Appellant then testified he had "no luck" marketing or selling the 23-acre tract at Red Lane. He testified to several inquiries, and explained he could not sell without advising potential buyers of the road vacation issues. He testified the interference was unreasonable in that he was demoralized, defeated, and, "worn out." He further testified during the eleven-month delay in scheduling a damage hearing, he had no idea that one of the Commissioners was lobbying the legislature to change the law.

{¶27} Appellant also presented the testimony of Larry McDaniel, a licensed real estate appraiser since 1975, who prepared an appraisal on behalf of Appellant in 2007. McDaniel testified that Jeffers' property became landlocked, and marketability was limited when Jeffers Road and Red Lane were vacated. He testified although Appellant owned other parcels contiguous to Fisher Road, the other parcels had mixed terrain-flat

areas, but also steep hillsides and a rock cliff.[3] He testified the "no trespassing" signs and a gate would have a negative effect upon marketability. However, McDaniel also admitted he had not performed analysis of the effect of the hay bales, "no trespassing" signs, or the gate to the property values.

{¶28} In the decision denying Appellant's request for the writ of mandamus, the trial court observed:

> "Whether the subdivision would have been economically successful then or now is speculation.* * * [T]here was no specific evidence that he was trying to sell it."

{¶29} We find the trial court did not abuse its discretion in its finding that Appellant's testimony regarding the losses associated with his real estate to be speculative. In addition to the above, he testified he had no evidence of lost sales and he had not obtained permits or otherwise proceeded with the subdivision planning since the vacations were rescinded.[4]

---

[3] The testimony indicates that Fisher Road was a main road which the subdivision would need to access. The testimony of Appellant and Larry McDaniel also indicated the topography of the parcels connecting the proposed subdivision area to Fisher Road was of poor quality and improving the parcels to connect to Fisher Road would be a laborious and expensive project.

[4] Jeffers also argues his ability to lease his property to hunters was thwarted. He testified he had hunting leases for his property and the abutting property owners would not allow hunters to enter after the roads were closed. He argues this additional financial loss for the first time on appeal. However, we decline to consider this alleged loss. It is well-settled that failure to raise an argument in the trial court results in waiver of the argument for purposes of appeal. *Community Action of Pike County v. Maynard,* 4th Dist. Pike No. 02CA695, 2003-Ohio-4312 ¶ 16. (Internal citations omitted.)

{¶30} And, Appellant also claims obstructions were placed on Jeffers and Red Lane Roads and he had to find ways to circumvent the obstructions in order to use his property. The trial court also observed:

"There was testimony at the October 2012 hearing that during the course of the Commissioners' road vacation proceedings the identifying public road signs were removed, a locked gate was engaged, and blocking hay bales taken to the sites. 'No Trespassing' signs were installed. These impediments did not prevent relator from feeding and caring for his cattle on his premises * * *." [H]e was able to able (sic) continue to use the land for the purpose to which it had been previously devoted."

{¶31} While Appellant apparently blames Appellees for the obstructions, Lt. Cogar testified no one from the sheriff's office placed the hay bales or the metal gate on the roads. Former Athens County Prosecutor C. David Warren, retired, testified, to his knowledge, no one on behalf of the county placed obstructions on Jeffers or Red Lane Roads.[5] To his knowledge, no one on behalf of the county advised private parties to obstruct those roads. Also, Lenny Eliason, Athens County Commissioner, testified that to his knowledge the Board did nothing to physically barricade Jeffers or Red Lane Roads or to attempt to block Jeffers' access to his property.

{¶32} The trial court also heard testimony of Michael Canterbury, operations manager for the Athens County Engineer's Department, and a

---

[5] Warren was the elected prosecutor between 2004 and 2011. By statute, he was the legal representative for all county officeholders, including the Board, the Trustees, and the sheriff's office.

member of the Planning Commission. Canterbury testified the Engineer's office is responsible for maintenance of the county roadways and advises the townships. Canterbury testified he is familiar with subdivision regulations. He is familiar with the vacation processes that took place with Jeffers Road and Red Lane Road. He recalled a lot of opposition to Appellant's subdivision. However, Canterbury testified he was not aware of anyone from the Engineer's Office physically blocking the roads - placing hay bales, installing a gate, taking down road signs, or placing "no trespassing" signs.

{¶33} Again, we find the trial court did not abuse its discretion with regards to its findings as to the obstructions. And, Appellant admitted at trial he used the roads nearly every day, despite the obstructions. He admitted he moved the bales of hay with his tractor when he needed to get in the areas. He admitted the "no trespassing signs" and hay bales did not impede him from access or using the roads. He admitted after cutting the chain on the gate, he opened and closed it each time as needed. He testified the locked metal gate was in place for approximately one month. This testimony demonstrates Appellant was able to use his property as he always had - for agricultural purposes.

{¶34} The trial court further observed:

"Relator may have had some justifiable anxiety because of his fear of arrest.* * * However, relator was not able to prove the

identity of those person(s) who erected the obstructions. * * * The road 'closures' were erroneously and publicly announced by the County's chief legal officer and by one of the Commissioners. But these actions, though they may qualify as 'interference,' do not rise to the level of substantial interference required for finding a compensable taking of property."

{¶35} The trial court's findings above are supported by Appellant's own admissions that he had no personal knowledge if the Board was responsible for removing the road signs and placing "no trespassing" signs, hay bales, and the chained gate. He also testified the sheriff came to his house shortly after his complaint in January 2005, and he thought he was going to be arrested. Ultimately, the officer only verified a report made by Appellant. He also admitted neither a deputy nor cruiser was ever present when he used his roads.

{¶36} Finally, Appellant argues the Board's lobbying efforts with the Ohio Legislature caused delay of the second damage hearing for the purpose of enacting new law which would apply to bar him from receiving compensation for his alleged losses relating to the vacations. He also argued the lobbying efforts affected and delayed his ability to fully utilize his land. Furthermore, he contends he suffered additional costs in defending the Board's action. With regard to the Board's lobbying efforts, the trial court held:

"During the course of these cases the General Assembly, prompted by the Court's rulings and leaders from Athens County, changed the law that had applied for over one hundred years to provide closing a public road does not result in entitlement to damages. See R.C. 5553.11, eff. 4-7-09. It may have been a goal to have this change apply to the current case. The actions show the desire to deprive relator of a jury assessment. While the political actions were not subject of testimony at the October hearing, the Court can take judicial notice of them because the law was in fact changed and respondents represented to the Court they had a role in promoting the statutory change. The motive to close the two roads remains unclear but it cannot be mistaken that the local governments involved for years have tried to accomplish that result. That such a prolonged effort would have inconvenience to relator is beyond question, but the Commissioners' successful lobbying efforts cannot be construed as substantial interference within the meaning of takings law."

{¶37} Lenny Eliason testified he had been an Athens County Commissioner since 1998. He acknowledged communicating with Brad Cole, a lobbyist for the County Commissioners Association of Ohio, seeking a change in the law. Eliason testified he told Cole that the language of 5553.01 needed to be changed to make sure it did not include vacation of a private road. He testified the Board was seeking change in the law in order that it would be applied in Athens County as it had been in other areas of the state. He also testified he was aware of discussion of the legislation between Brad Cole and Larry Long, Executive Director of the County Commissioners' Association.

{¶38} In sum, Eliason's testimony was the only relevant evidence presented at the October 2012 hearing, about the lobbying efforts and motives of the Board. We agree with the trial court's finding that, within the meaning of Ohio takings law, this evidence cannot be construed as substantial or unreasonable interference.

{¶39} For the foregoing reasons, we find the trial court did not abuse its discretion when it denied the complaint for writ of mandamus. The trial court was not unsympathetic to the financial losses Appellant obviously suffered, or the inconveniences he experienced. Neither are we. However, we agree with the trial court that they did not rise to the level of a pro tanto taking. A pro tanto taking cannot be found where there is no substantial or unreasonable interference with Appellant's rights of ownership by the named government entities. Based on the evidence presented at the October 2012 trial, we cannot say Appellant provided clear and convincing evidence that a he was entitled to the writ. As such, we overrule the first assignment of error and affirm the judgment of the trial court.

ASSIGNMENT OF ERROR TWO

"II. THE TRIAL COURT ERRED IN DISMISSING THE APPELLANT'S REMAINING CLAIMS BASED ON THE DOCTRINE OF ISSUE PRECLUSION."

A. STANDARD OF REVIEW

**{¶40}** Under the doctrine of res judicata, "a valid, final judgment rendered upon the merits bars all subsequent actions based upon any claim arising out of the transaction or occurrence that was the subject matter of the previous action." *Beneficial Ohio Inc., v. Parish*, 4th Dist. Ross No. 11CA3210, 2012-Ohio-1146, ¶ 11, quoting *Grava v. Parkman Twp., 73 Ohio St.3d 379, 382, 1995-Ohio-331, 653 N.E.2d 226. 1.* The doctrine of res judicata involves both claim preclusion (historically called estoppel by judgment in Ohio) and issue preclusion (traditionally known as collateral estoppel). *Id.* See *Whitehead v. Gen. Tel. Co.*, 20 Ohio St.2d 108, 254 N.E.2d 10 (1969); *Krahn v. Kinney*, 43 Ohio St.3d 103, 107, 538 N.E.2d 1058, 1062 (1989); 46 American Jurisprudence 2d (1994) 780, Judgments, Section 516. "The applicability of res judicata is a question of law that is subject to de novo review." *Althof v. State,* 4th Dist. Gallia No. 04CA16, 2006-Ohio-502, at ¶ 13.

## B.  LEGAL ANALYSIS

**{¶41}** Relevant to this appeal, Appellant's amended complaint, filed in January 2007, set forth the following causes of action:

5.  A denial of procedural due process with regard to Jeffers Road;

6.  A denial of procedural due process with regard to Red Lane;

9.  A denial of any meaningful procedure to afford him the right to seek compensation, under color of law;

10. A taking of private property for private use; and,

11. A denial of equal protection of the law.

{¶42} On June 23, 2015, the trial court dismissed Appellant's remaining claims, finding as follows:

> "[T]he remaining causes of action, collectively referred to as constitutional claims or Section 42 U.S.C. 1983 claims (numbered 5, 6, 9, 10, and 11) are challenged as moot or required to be dismissed because of the doctrine of issue preclusion."

{¶43} Under the second assignment of error, Jeffers contends the trial court's decision dismissing his remaining federal claims based on the doctrine of issue preclusion was in error because his mandamus claim had a higher evidentiary standard than did his remaining constitutional claims. Regarding the difference in evidentiary standards, he is correct. As cited above, the evidentiary standard for mandamus cases is "clear and convincing." By contrast, an action under § 1983 requires a plaintiff to provide proof by a preponderance of the evidence. *Pointer v. Detroit,* 2011 WL 2580664, (U.S.D.C.).

{¶44} The Board directs us to *Trafalgar Corp. v. Miami County Board of Commissioners,* 519 F.3d 285 (U.S.D.C. 6th), which discussed the principles of preclusion, beginning with the tenet that a federal court must give prior state court judgments the same effect those judgments would be

given in the courts of the rendering state. 28 U.S.C. § 1738.  A federal court

must therefore apply the principles of preclusion from the rendering state to

state court decisions. *Trafalgar, supra,* citing *Hamilton's Bogarts, Inc., v.*

*State of Michigan,* 501 F.3d 644, 650 (6th Cir. 2007).  *Trafalgar* noted that

Ohio state courts recognize both claim and issue preclusion. *Fort Frye*

*Teachers Ass'n, OEA/NEA v. State Employment Relations Bd.,* 81 Ohio St.3d

392, 692 N.E.2d 140, 144 (1998).  In the *Fort Frye* decision, we observed:

> "[C]laim preclusion * * * holds that a valid, final judgment
> rendered upon the merits bars all subsequent actions based upon
> any claim arising out of the transaction or occurrence that was
> the subject matter of the previous action." *Id.* (citing *Grava v.*
> *Parkman Twp.,* 73 Ohio St.3d 379, 653 N.E.2d 226, 228
> (1995)).
>
>  * * *
>
> "The doctrine of issue preclusion, also known as collateral
> estoppel, holds that a fact or a point that was actually and
> directly at issue in a previous action, and was passed upon and
> determined by a court of competent jurisdiction, may not be
> drawn into question in a subsequent action between the same
> parties or their privies, whether the cause of action in the two
> actions be identical or different." *Id.* (citing *Norwood v.*
> *McDonald,* 142 Ohio St. 299, 52 N.E.2d 67 (1943)).

**{¶45}** In *Trafalgar, supra,* the Sixth District Court of Appeals held

that issue preclusion barred further litigation under the Takings clause.

Trafalgar initially sought compensation under the United States and Ohio

Constitutions for a regulatory taking of its property, alleging that Trafalgar

had "been deprived of the economic viable use of [its] Property." The Ohio state courts determined that Trafalgar could not make out a claim for compensation because it failed to present sufficient evidence that it had been deprived of all economically viable uses of the land. In its action before the district court, Trafalgar again sought to litigate the issue of just compensation under the Takings clause, arguing that the defendants "have stripped the property of any viable, economic use." The district court held because that issue was directly decided in a previous state court action, it could not be re-litigated in federal district court.

{¶46} Trafalgar protested that it did not actually argue the federal takings issue, and therefore it should not be precluded from litigating that issue in federal court. But, the district court held Trafalgar put directly at issue the question of whether it was entitled to just compensation under the Ohio and United States Constitutions by including them in its complaint and by alleging that it had "been deprived of the economic viable use of [its] property." The court stated:

> "[Trafalgar] thus 'effectively asked the state court to resolve the same federal issues' that it now claims it reserved for federal court. *San Remo Hotel, L.P. v. City of San Francisco,* 545 U.S. 323, 341, 125 S.Ct. 2491, 162 L.Ed.2d 315 (2005); see C. Wright And A. Miller, 18 Federal Practice and Procedure, § 4419 (2007). The court of appeals and the Ohio Supreme Court held that the takings claims were without merit. *Trafalgar,* 104 Ohio St.3d 350, 819 N.E.2d 1040, 1045 (2004).

Thus issue preclusion bars further litigation of Trafalgar's
takings claim."

**{¶47}** Appellant has directed us to *Schweller v. Schweller,* 1997 WL 793106 (Dec. 26, 1997); *Premier Courier Inc., v. Flaherty,* 1995 WL 571846 (Sept. 26, 1995); *In re Weaver,* 41 Ohio St.2d 97, 322 N.E.2d 665, (1975); and *Buddie Contracting, Inc., v. Seawright,* 595 F.Supp. 422 (D.C. 1984). *Schweller* involved contentious parties in post-divorce proceedings which culminated in the trial court's grant of summary judgment to the wife on a malicious prosecution claim and grant of summary judgment to the husband on assault and battery claims. The First District appellate court generally commented upon the differing standards of proof required in civil and criminal cases. In sustaining the parties' assignments of error, the appellate court observed:

> "The trial court relied upon the rulings of the criminal court in
> order to justify summary judgment on both civil intentional
> torts. Not only are the elements of the offense different from
> the elements of the torts, the standards used to judge civil
> liability and criminal guilt are also different."

**{¶48}** In *Premier Courier*, the plaintiff, Premier Courier, was a package delivery service serving the greater Columbus area. Premier Courier hired Flaherty as a manager of its Columbus operation. When hired, Flaherty executed an employment contract containing provisions restricting his right to operate a competing business, restricting his right to solicit

plaintiff's customers and prohibiting him from disclosing trade secrets for a period of three years after termination. When Flaherty's employment with Premier Courier was terminated, Flaherty started his own package delivery business. Premier Courier filed an action in the Franklin County Court of Common Pleas seeking a preliminary and permanent injunction preventing Flaherty from operating the business and seeking damages as a result of an alleged breach of the restrictive covenants in his employment agreement and upon an alleged violation of Ohio's trade secret law. Following an evidentiary hearing, the referee recommended that the trial court deny the request for injunctive relief. Premier Courier objected. The trial court overruled the objections and adopted the referee's report as its own. Premier Courier appealed and the appellate court dismissed for lack of a final appealable order.

{¶49} Flaherty filed a motion for summary judgment with respect to plaintiff's remaining claims for monetary relief. The trial court granted Flaherty's motion for summary judgment and denied defendants' motion. On appeal Premier Courier pointed out certain restrictive covenants in Flaherty's employment contract and the trade secret violation. Based on facts in the referee's decision, that defendants' company was not in direct or indirect competition with any business activity conducted by plaintiff at the

time of Flaherty's termination, the trial court determined that all material factual issues had been finally resolved in defendants' favor in the prior proceedings upon plaintiff's motion for preliminary and permanent injunction.

{¶50} On appeal of the summary judgment ruling, the appellate court noted Ohio law on collateral estoppel, observing:

> "[C]ourts have refused to apply the doctrine to prevent a litigant from challenging the trial court's prior rulings, when the quantum of proof necessary to render both the original and subsequent judgment is not identical. See e.g. *State Bar Assn. v. Weaver*, 41 Ohio St.2d 97 (1975); *F. Buddy Contracting, Inc. v. Seawright* (D.C.Ohio 1984), 595 F.Supp. 422."

{¶51} The appellate court further found:

> "In the present case, the burden of proof placed upon plaintiff in the proceedings upon the motion for a preliminary and permanent injunction was that of proof by clear and convincing evidence. *Call v. G.M. Sader Excavating & Paving, Inc.*, 68 Ohio App.2d 41, 46 (1980). This is clearly a higher quantum of proof than that required to prevail in its claims for monetary relief, which may be established by a preponderance of the evidence. *Id.*"

{¶52} *Buddie v. Seawright* arose from the award of a contract to build a solid waste transfer station for the City of Cleveland in May 1975. Buddie later filed a taxpayer's action in Cuyahoga County Common Pleas Court (*Buddie I*) alleging a violation of the state laws regulating the award of public contracts. Buddie sought an injunction barring execution of the

contract and re-advertisement of the bids. A trial judge later found, in relevant part, no evidence of improper conduct or collusion involving any public official or bidder.

{¶53} Buddie appealed the decision of the *Buddie I* court to the Eighth District Court of Appeals. The appellate court affirmed the trial judge's decision in December 1976. Subsequent to the close of the *Buddie I* action, press revelations and a subsequent prosecution disclosed an unlawful relationship between various parties involved in the case. In 1978, the Cuyahoga County Grand Jury indicted several parties on criminal charges arising out of their involvement in the award of the contract for the transfer station. Ultimately, Seawright pled guilty to one count of attempt and complicity to have an unlawful interest in a public contract.

{¶54} After entry of the guilty pleas, Buddie instituted federal court action alleging violations of the antitrust laws. Buddie alleged conspiracy to secure the award of the contract for Peabody, violating both § 1 of the Sherman Act, 15 U.S.C. § 1, and Ohio's Valentine Act, Ohio Rev.Code § 1331.01 et seq. Peabody moved for summary judgment arguing in part, that collateral estoppel prevented Buddie from establishing facts required to make out its cause of action. In ruling the collateral estoppel would not be

applied, the court commented that an exception to the doctrine applied in

that:

> "The issue confronting the Court is whether the *Buddie I* court's findings regarding collusion preclude Buddie from presenting evidence on the conspiracy issue to this Court.
>
> * * *
>
> There is a clear and convincing need for a new determination of the issue * * * (c) because the party sought to be precluded, as a result of the conduct of his adversary or other special circumstances, did not have an adequate opportunity or incentive to obtain a full and fair adjudication in the initial action.

{¶55} However, the *Buddie* court cautioned:

> "In reaching this conclusion, the Court is mindful that this decision represents a deviation from established concepts of collateral estoppel. This decision should not be interpreted as opening the floodgates to relitigation of the vast majority of factual issues. The peculiar facts presented by this case make this case an unusually good candidate for use of the exceptions to the general rule of issue preclusion. It is important to interpret the exceptions to the general rule of issue preclusion so as not to overwhelm the general rule. Thus, while concluding that the general rule does not apply to this case, the Court emphasizes the narrowness of this holding."

{¶56} *Weaver*, also cited above by *Premier Courier,* involved an

attorney's disciplinary proceeding subsequent to the attorney's,[Weaver's]

acquittal on criminal charges. In its discussion of the inapplicability of the

doctrine of res judicata, the Supreme Court of Ohio emphasized the differing

evidentiary standards. The Court held:

"The doctrine of res judicata renders final judgments conclusive only when subsequent actions involve the same parties, or those in privity with them, as in the first action; when the issues to which the evidence is directed are identical in both actions; and when the quantum of proof necessary to render both the original and subsequent judgments is identical."

{¶57} Turning to application of these legal principles in the case sub judice, we point out in *Jeffers I,* this Court held at paragraph 8:

"Jeffers' property abuts the closing roads.  Therefore, pursuant to *Eastland Woods,* he is entitled to compensation and damages."

{¶58} In *Jeffers II,* at paragraph 7, we held:

"In the mandamus action, Jeffers amended the complaint to add various claims.  Jeffers included a series of claims for money damages under Section 1983, Title 42 U.S.Code.  Essentially, these claims rely on the same facts as Jeffers's claim for mandamus."

{¶59} We also made the observation that the constitutional claims relied on the same underlying facts as the mandamus action in *Jeffers II* at paragraph 22.  As in *Trafalgar, supra,* Appellant placed the alleged pro tanto taking directly at issue in his mandamus proceeding.  We have affirmed the trial court's decision that no taking occurred.  Appellant's federal claims rely on the same facts as did his mandamus action.  However, we must agree with Appellant that because the standards of proof are different for the Section 1983 claims than on the mandamus action, this renders his case an exception to the general rule, and res judicata does not apply to bar his

federal causes of action.  The standard of proof to establish the Section 1983

claims, preponderance of the evidence, is less than the standard of proof

necessary to establish the mandamus action, which is a clear and convincing

burden.

{¶60} For the foregoing reasons, we find merit to Appellant's

argument that the doctrine of res judicata should not bar his Section 1983

claims.  Based on our de novo review and the relevant Ohio law, we find the

trial court erred by finding that the doctrine of issue preclusion applied to bar

further consideration of Jeffers' constitutional claims.  As such, we sustain

Appellant's second assignment of error and reverse the judgment of the trial

court.

ASSIGNMENT OF ERROR THREE

"III. THE TRIAL COURT ABUSED ITS DISCRETION
WHEN IT DENIED APPELLANT'S MOTION FOR LEAVE
TO AMEND HIS COMPLAINT."

A.  STANDARD OF REVIEW

{¶61} "The decision to grant or deny a motion for leave to amend a

pleading is within the sound discretion of the trial court. * * * Thus, we will

not reverse a court's decision denying a motion for leave to amend, absent an

abuse of discretion." *Rose v. Cochran,* 4th Dist. Ross No. 14CA3445, 2014-

Ohio-4979, ¶ 17, quoting *Mollette v. Portsmouth City Council,* 169 Ohio

App.3d 557, 2006-Ohio-6289, 863 N.E.2d 1092, ¶ 28 (4th Dist.); *Fifth Third Bank v. Rankin*, 4th Dist. Pickaway No. 10CA45, 2011-Ohio-2757, ¶ 36. As discussed above, an abuse of discretion occurs when a decision is unreasonable, arbitrary, or unconscionable. *Rose, supra,* citing *State ex rel. Nese v. State Teachers Retirement Bd. of Ohio,* 136 Ohio St.3d 103, 2013-Ohio-1777, 991 N.E.2d 218, ¶ 25.

## B. LEGAL ANALYSIS

{¶62} On September 8, 2011, Appellant filed a motion seeking leave of court pursuant to Civil Rule 15 to amend his complaint to include a retaliation cause of action and one regarding the endorsement, lobbying, and promoting of ex post facto legislation by Commissioner Eliason designed specifically to curtail Appellant's constitutional rights. Appellant alleged that his right to a damage hearing was unnecessarily delayed while the new legislation was promoted and passed by the General Assembly, exacerbating his damages, costs, and legal fees. The trial court denied the motion, finding that "[during the course of this protracted case the Ohio General Assembly legislated in the subject area and (sic) parties and witnesses in this case played a significant role in recommending changes to that body. * * * While the efforts to secure change were successful, the Court of Appeals expressed

that such changes could not apply to or affect this case." *Jeffers II* at ¶ 35.

Under the final assignment of error, Appellant contends the trial court's

decision found the Board engaged in actions intended to deprive him of a

jury assessment and that the delay of the second hearing caused him

additional costs in defending.  Appellant concludes to deny his motion to

amend was an abuse of discretion.

{¶63} The Board responds that overruling Appellant's motion to

amend the claim was not an abuse of discretion because the motion was: (1)

untimely; (2) barred by the *Noerr-Pennington* doctrine which bars liability

under Section 1983 for efforts to petition the government for changes in the

law; and (3) a Section 1983 action for money damages is not a remedy for an

alleged "*Ex Post Facto*" violation.  The Board concludes multiple valid

reasons support the trial court's decision overruling Appellant's motion for

leave to amend his complaint and thus, the trial court did not abuse its

discretion in doing so.

{¶64} "Pursuant to Civ.R. 15(A), once an answer to a complaint is

served, a party may amend a pleading only by leave of the court or by

written consent of the adverse party." *Rose, supra,* at ¶ 16. See *Martin v.*

*Ohio Dept. of Rehab. and Corr.,* 140 Ohio App.3d 831, 837, 749 N.E.2d 787

(4th Dist.2001).  Although Civ.R. 15(A) provides that leave of court shall be

freely given when justice so requires, there is no absolute or unlimited right to amend a complaint. *Rose, supra*, at ¶ 20. See generally *Kinchen v. Mays,* 8th Dist. Cuyahoga No. 100672, 2014-Ohio-3325, ¶ 17. "Where a plaintiff fails to make a prima facie showing of support for new matters sought to be pleaded, a trial court acts within its discretion to deny a motion to amend the pleading." *Wilmington Steel Products, Inc. v. Cleveland Elec. Illuminating Co.,* 60 Ohio St.3d 120, 573 N.E.2d 622 (1991), syllabus; *Townsend v. Ohio Dept. of Transp.,* 10th Dist. Franklin No. 11 AP-672, 2012-Ohio-2945, ¶ 34; *Kinchen* at ¶ 17. This requirement ensures that a proposed amendment is not a delaying tactic or one which would cause prejudice to the opposing party. *Darby v. A–Best Products Co.,* 102 Ohio St.3d 410, 2004-Ohio-3720, 811 N.E.2d 1117, ¶ 20, citing *Wilmington Steel* at 122.

{¶65} We recognize, as pointed out by Jeffers, that the trial court's decision made no reference to the constitutional claims as being time-barred or being barred by application of the *Noerr-Pennington Doctrine*. Similarly, the trial court's decision did not discuss the availability of money damages for an alleged "Ex Post Facto" violation. The trial court's decision stated:

> "The remaining causes of action, collectively referred to as constitutional claims or Section 42 U.S.C. 1983 claims (numbered 5, 6, 7, 9, 10, and 11) are challenged as moot or required to be dismissed because of the doctrine of issue preclusion. This Court agrees with this position * * *."

{¶66} Despite our resolution of Appellant's second assignment of error above, we find that the trial court did not abuse its discretion in overruling his motion for leave. While Appellant's claims for retaliation and improper Ex Post Facto legislation rely on the same underlying facts and evidence as argued in his mandamus action, they are first and foremost untimely. Therefore, we find the trial court did not abuse its discretion in denying Appellant's motion for leave to amend his complaint to add the additional claims. As such, we overrule the third assignment of error and affirm the judgment of the trial court.

CROSS-ASSIGNMENT OF ERROR OF APPELLEE BOARD
OF TRUSTEES OF ALEXANDER TOWNSHIP, OHIO

"I. THE TRIAL COURT'S DECISIONS AND JUDGMENTS
AT ISSUE ARE APPROPRIATE BY VIRTUE OF OTHER
SEPARATE GROUNDS SUPPORTED BY THE RECORD."

{¶67} Having affirmed the judgment of the trial court as to assignments of error one and three above, having reversed the judgment of the trial court as to assignment of error number two, and having set forth our reasoning fully, the cross-assignment of error is rendered moot. As such, we decline to consider it. Accordingly, we affirm the judgment of the trial court.

**JUDGMENT AFFIRMED IN PART, REVERSED IN PART, AND
REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH
THIS OPINION.**

Harsha, J., concurring:

**{¶68}** I concur in the judgment and opinion overruling Jeffers's first and third assignments of error. In addition, I concur in the judgment sustaining Jeffers's second assignment of error and reversing the trial court's dismissal of his Section 1983 claims based on res judicata for the following reasons.

**{¶69}** Jeffers asserts in his second assignment of error that the trial court erred in dismissing his Section 1983 claims based on res judicata. He claims that because the standards of proof are different for his Section 1983 claims than his mandamus claim, res judicata did not bar his claims. The Supreme Court of Ohio has expressly held that "*[t]he doctrine of res judicata renders final judgments conclusive only* when subsequent actions involve the same parties, or those in privity with them, as in the first action; when the issues to which the evidence is directed are identical in both actions; and *when the quantum of proof necessary to render both the original and subsequent judgments is identical.*" (Emphasis added.) *Ohio State Bar Assn. v. Weaver*, 41 Ohio St.2d 97, 99-100, 322 N.E.2d 665 (1975). Consequently, "courts have refused to apply the doctrine to prevent a litigant from challenging the trial court's prior rulings, when the quantum of proof necessary to render both the original and subsequent judgment is

not identical." *See Premier Courier, Inc. v. Flaherty*, 10th Dist. No.

95APE01-34, 1995 WL 571846, *3.

{¶70} This is not a case where the exception to this general rule

applies because Jeffers's burden of proof is lower for his Section 1983

claims than for his previously decided mandamus claim. *Compare Queener*

*v. Dayton*, 2d Dist. Montgomery No. 16494, 1997 WL 797760, * 3 (Dec. 31,

1997) ("Even where the burdens of proof are not identical, res judicata will

apply against a party to a subsequent proceeding in which he bears a higher

burden of proof or bears a burden carried by the other party in the earlier

proceeding").

{¶71} As the majority opinion notes, the standard to establish his

Section 1983 claims-preponderance of the evidence-is less than the standard

to establish his mandamus claim-clear and convincing evidence. Therefore,

based on *Weaver* and its progeny, res judicata could not bar Jeffers's Section

1983 claims.

{¶72} And because the trial court held that res judicata applied, the

board's and trustees' argument that the court presumably applied the correct

standard of proof is meritless. By misapplying the doctrine of res judicata,

the court never proceeded to apply the correct evidentiary standard. Nor am

I convinced that the law-of-the-case doctrine should apply here given the

differing standards of proof and because our prior appeals did not specifically resolve Jeffers's Section 1983 claims.  Although this court in *Jeffers II*, 2011-Ohio-675, did indeed note that he amended his prior mandamus complaint to add claims for money damages under Section 1983, we further noted that the trial court had not yet resolved those claims.  *Id.* at ¶ 7, 22-24.

{¶73} Because the federal cases cited by the board were not asked to apply our controlling state law concerning res judicata, I concur in the sustaining of Jeffers's second assignment of error.

# **JUDGMENT ENTRY**

It is ordered that the JUDGMENT BE AFFIRMED IN PART, REVERSED IN PART, AND CAUSE REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. Appellant and Appellees shall split the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Athens County Common Pleas Court to carry this judgment into execution.

Any stay previously granted by this Court is hereby terminated as of the date of this entry.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Harsha, J.:      Concurs with Concurring Opinion.
Hoover, J:       Concurs in Per Curiam Opinion and Concurring Opinion.
McFarland, J.:  Concurs in Judgment and Opinion as to Assignments of
                Error I & III and Cross Assignment Error;
                Dissents as to Assignment of Error II.

                               For the Court,

BY:      _____
          William H. Harsha, Judge

BY:      _____
          Marie M. Hoover, Judge

BY:      _____
          Matthew W. McFarland, Judge

### NOTICE TO COUNSEL
**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**